ANNIE P. KINLAW, ADMINISTRATRIX OF THE ESTATE OF HERMAN FLOYD KINLAW AND THE UNITED STATES FIDELITY AND GUARANTY COMPANY, v. NORFOLK SOUTHERN RAILWAY COMPANY.

(Filed 20 January, 1967.)

1. **Appeal and Error § 30;   Death § 3—**
    Where, in an action for wrongful death, the agreed statement of the case on appeal recites that the action was instituted by plaintiff as administratrix of the decedent, nonsuit cannot be sustained on the ground that plaintiff was not entitled to maintain the action, even though her allegation that she was the duly qualified and acting administratrix of the decedent is denied in the answer and plaintiff introduces no evidence of her qualification.

2. **Trial § 21—**
    On motion to nonsuit, plaintiff's evidence must be taken as true and she must be given the benefit of every reasonable inference that may be drawn therefrom.

3. **Railroads § 5—**
    Plaintiff's evidence permitting inferences that the automatic signal lights at a railroad crossing were not flashing at the time of the collision, that the engineer did not blow any whistle, ring any bell, or otherwise give any warning of the approach of the locomotive to the crossing, and that the view of the locomotive approaching the crossing was obstructed by an embankment, is sufficient to be submitted to the jury on the issue of negligence in an action for wrongful death of a driver struck at the crossing by the locomotive.

4. **Same;   Evidence § 15—**
    Testimony of a witness that he heard no whistle or bell as he traversed the railroad crossing some seven seconds ahead of the decedent is some

evidence that no signal was given, there being no evidence that the circumstances were such that the witness could not have heard the signal had it been given.

**5. Railroads § 5—**

A railroad company is under duty to give a traveler notice of the approach of its locomotives to a grade crossing when the traveler's view of an approaching locomotive is obstructed by an embankment, and its failure to do so is negligence.

**6. Same—**

Failure of an automatic signal to function at a given moment at a railroad crossing is not sufficient of itself to establish negligence of the railroad, but evidence tending to show failure of the railroad company to give any notice whatever of the approach of its locomotive to a blind crossing, is sufficient to take the issue of negligence to the jury.

**7. Negligence § 26—**

Nonsuit for contributory negligence is proper only when plaintiff's own evidence, interpreted in the light most favorable to plaintiff, discloses contributory negligence as a proximate cause of the accident so clearly that no other conclusion can reasonably be drawn therefrom.

**8. Railroads § 5—**

Evidence tending to show that intestate was driving a truck some 15 miles per hour, downgrade, in approaching a railroad crossing, that his view of the approaching locomotive was obstructed by an embankment, that at the time the automatic crossing signals were not flashing, that the engineer gave no warning of the approach of the locomotive by bell, whistle, or other wise, *held* not to disclose contributory negligence as a matter of law on the part of intestate as a proximate cause of the ensuing crossing accident.

**9. Same—**

Nothing else appearing, the failure of a driver to operate his vehicle at a speed and with a lookout such that he can bring it to a stop before reaching a crossing and colliding with an approaching train, is negligence, but where it further appears that the automatic signals erected at a blind crossing were not flashing at the time and that the approaching locomotive gave no signal by whistle or bell or otherwise, nonsuit for contributory negligence should not be allowed, since, even though the failure of the signals does not relieve the motorist of the duty to exercise due care, such failure has a natural tendency to lessen or abate his caution.

**10. Death § 4—**

The effect of the 1951 amendment to G.S. 1-53 and G.S. 28-173 is to make the time limitation for the institution of an action for wrongful death a statute of limitations and not a condition precedent to the right of action.

**11. Time—**

In computing the time within which an act must be done, the first day must be excluded and the last day included, and if the last day is a Saturday, Sunday or a legal holiday, it must be excluded. G.S. 1-593.

**12. Holidays—**

The first Monday in September each year is a public holiday. G.S. 103-4.

**13. Evidence § 3—**

The courts will take judicial notice of the concurrence of days of the week with days of the month for any year not unreasonably distant.

**14. Death § 4;   Limitation of Actions § 3.1—**

This action for wrongful death was instituted two years and two days after the death of intestate, but the last day of the two year period was a Sunday and the following day was Labor Day. *Held:* The action was instituted within the time allowed by G.S. 1-53.

APPEAL by plaintiffs from *Latham, S.J.,* at the May 1966 Civil Session of HARNETT.

The plaintiff administratrix brought this action to recover damages for the wrongful death of her intestate. The United States Fidelity & Guaranty Company was joined as an additional party plaintiff upon the motion of the defendant railroad. It filed a complaint adopting the allegations of the complaint of the original plaintiff, hereinafter called the plaintiff, and alleging certain rights by way of subrogation. Its participation in the action presents no additional question upon this appeal. Hereinafter, "plaintiff" refers to Annie P. Kinlaw, Administratrix, only.

Originally, the plaintiff joined as defendant Brown Paving Company and Seth Wooten Company. Each of them demurred to the complaint for its failure to state a cause of action against such defendant. Each demurrer was sustained. There was no appeal from the sustaining of these demurrers and no amendment to the complaint with reference to either of these original defendants. Hereinafter, "defendant" refers to the railroad only.

Summons was issued 4 September 1962. It is not disputed in the record on appeal that the deceased died on 2 September 1960.

The plaintiff alleges in her complaint that her intestate was killed in a collision between a locomotive of the defendant railroad and a vehicle, described as a "Euclid waterwagon," at an intersection of the railroad with U. S. Highway 401 in or immediately north of the town of Lillington. She alleges that the proximate cause of the collision and death was the joint and concurring negligent acts and omissions of the defendant, the Brown Paving Company and the Seth Wooten Company. She alleges that the defendant was negligent in that it failed to give any warning of the approach of its locomotive to the crossing, failed to keep a lookout, and failed to stop the locomotive before striking the waterwagon, which it could have done if its engineer had maintained a proper lookout.

The defendant, in its answer, admits the occurrence of the col-

lision at this crossing on 2 September 1960, and the resulting injury and death of the plaintiff's intestate on that date. It also admits all acts and omissions of the Brown Paving Company and the Seth Wooten Company, but denies all allegations of the complaint with reference to negligence by the railroad. As one affirmative defense, it alleges that the plaintiff's intestate was guilty of contributory negligence in that he drove the waterwagon upon the crossing although automatic signal lights, indicating the approach of the locomotive, were flashing and visible to him as the machine and the locomotive both approached the crossing. As a further affirmative defense, it alleges that more than two years elapsed from the accrual of the plaintiff's alleged cause of action to the institution of this suit, so that the provisions of G.S. 1-53 bar recovery by the plaintiff in this action.

At the conclusion of the plaintiff's evidence, a judgment of nonsuit was entered. The plaintiff appeals, assigning as error only the entry of such judgment.

In addition to testimony as to the health, age and earnings of the deceased, the evidence introduced by the plaintiff may be summarized as follows:

The deceased died on 2 September 1960 at the intersection of the railroad track and the highway referred to in the pleadings. The collision between the waterwagon operated by him and the locomotive occurred at approximately 1 p.m. The waterwagon consisted of a tractor with a water tank trailer attached. Its total length was 35 or 40 feet. The deceased was driving the waterwagon northwardly on Highway 401 through the town of Lillington, 100 to 150 feet behind another construction machine, driven by William Bass, who testified for the plaintiff.

There was in progress a highway construction project involving the widening of the highway so as to provide two lanes for traffic in each direction. Four lanes were complete and open for traffic south of the crossing but the two lanes ultimately designed for northbound traffic were not open beyond it. Immediately south of the crossing, barriers were placed upon the northbound lanes so as to divert northbound traffic onto what would ultimately become one of the southbound lanes. The deceased, William Bass and their employer had no connection with this construction project, they being simply engaged in the movement of these machines along the highway as members of the traveling public.

Approximately 700 feet before reaching the crossing, Bass and the deceased stopped for a traffic signal in the town of Lillington. From that point to the crossing, the highway proceeded at a substantial downgrade. At the crossing, on each side of the highway,

there were substantial structures carrying electrically operated signal lights designed to operate automatically and, by flashing lights, give warning to travelers upon the highway of the approach of a train. There was also a "railroad crossing" sign erected on the side of the highway facing northbound traffic. Thus, the existence of the railroad crossing was readily discernible to the deceased from the time he left the traffic light 700 feet to the south.

The locomotive was traveling east so that it approached the crossing from the left of the plaintiff's intestate. Upon that side of the highway the track runs sharply upgrade to the crossing and through a wooded area. An embankment rising from the edge of the highway to the left of the plaintiff's intestate reached a height of 18 feet at a point 17 feet from the edge of the highway and 50 feet from the center of the railroad track. Trees and bushes grew upon the top of this embankment. Thus, the view of the deceased of an eastbound locomotive and the view of the engineer of northbound highway traffic were obstructed as each approached the crossing. Upon the structure on which the electrically operated flashing signal lights were suspended, there was, facing the deceased as he approached the crossing, a sign reading, "Stop on Red Signal."

As an incident to the highway construction project, the railroad had raised the level of its tracks at and approaching this project, this having been completed prior to the date of the collision.

No witness for the plaintiff saw the collision. Bass, driving the first machine, observed the automatic signal lights as he approached the crossing. Prior to reaching the crossing, he last looked at them when 25 feet away. After passing the crossing, he looked back. At that time, the deceased's machine was so following him and about 150 feet to the rear. Both were moving downgrade, 10 to 15 miles per hour. At that time, Bass again looked toward these signal lights. He looked back toward the crossing again when about 200 feet beyond the crossing. At no time did he see the signal lights in operation. As he went over the crossing, he looked to his left and saw no train, the track curving into the woods some 300 feet from the crossing. At no time did Bass hear any signal, bell or whistle indicating the approach of the locomotive. When he had gone approximately 300 feet beyond the crossing, he observed a "commotion" at the crossing. He went on to a point where he could turn around, which was about a mile from the crossing, and there turned his vehicle and went back. Upon his return to the crossing he saw that the collision had occurred. At that time, he still did not see the crossing lights in operation, but the locomotive had proceeded be-

yond the crossing a substantial distance, there being no cars attached to it.

After Bass arrived at the crossing, he observed someone go to the "control box" upon the structure on which the automatic signal lights were suspended and open and close this box. Thereafter, the locomotive was backed over the crossing and the signal lights worked. Bass did not observe the signal lights flashing until after such opening and closing of the "control box."

At the time of the collision, Tommy Roberts, apparently an employee of a contractor engaged upon the highway construction project, was operating a grading machine 300 or 400 feet north of the crossing. He did not see the collision but heard the impact. Prior to the impact, he did not hear a whistle blow. The grader being operated by him "makes a lot of noise," and he had his attention on his work.

The vehicles operated by Bass and the plaintiff's intestate had diesel motors and each "made a noise about like a truck."

*Neill McK. Ross and D. K. Stewart for plaintiff appellants.*
*R. N. Simms, Jr., for defendant appellee.*

LAKE, J. The allegation in the complaint that the plaintiff is the duly qualified and acting administratrix of the deceased is denied in the answer and the record does not disclose any evidence that she was so appointed. Nothing else appearing, the judgment of nonsuit would have been proper on this ground. *Graves v. Welborn,* 260 N.C. 688, 133 S.E. 2d 761; *Carr v. Lee,* 249 N.C. 712, 107 S.E. 2d 544. However, the agreed statement of the case on appeal states, "This is a civil action instituted by Annie P. Kinlaw, Administratrix of the Estate of Herman Floyd Kinlaw, deceased." We infer from this that the defendant concedes her due appointment and qualification. See *Abernethy v. Burns,* 210 N.C. 636, 188 S.E. 97. Consequently, the judgment of nonsuit cannot be sustained upon the ground that the plaintiff is not the party entitled to maintain this action.

To determine whether the plaintiff's evidence shows negligence by the defendant which was the proximate cause of the collision and death, the evidence of the plaintiff must be taken as true, and every reasonable inference favorable to her must be drawn therefrom. *Cox v. Gallamore,* 267 N.C. 537, 148 S.E. 2d 616; *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536; *Sink v. Moore,* 267 N.C. 344, 148 S.E. 2d 265.

So considered, the plaintiff's evidence is sufficient to permit,

though not to compel, the inference that the automatic signal lights, at the crossing were not flashing, or illuminated, prior to the collision. Her evidence is also sufficient to permit, though not to compel, the inference that the defendant did not blow any whistle, ring any bell, or otherwise give any warning of the approach of the locomotive to the crossing. "[T]estimony that a person nearby who could have heard and did not hear the sounding of a whistle or the ringing of a bell is some evidence that no such signal was given." *Johnson & Sons, Inc., v. R. R.,* 214 N.C. 484, 199 S.E. 704; and see *Cox v. Gallamore, supra.*

The testimony of the witness Bass is that he heard no whistle or bell as he approached the crossing, went over it and proceeded beyond it. He also testified that he was approximately 150 feet in front of the machine driven by the deceased, which, at the speed at which they were driving, according to his testimony, placed him about seven seconds ahead of the deceased in reaching the crossing. The witness testified that these machines made about the same noise as a diesel powered truck. It could be found by a jury that such a vehicle, proceeding slowly downgrade, would not make sufficient noise to prevent the driver from hearing the whistle or bell of an approaching train. The evidence does not indicate any other vehicle or equipment nearer to the crossing than 400 feet.

Though the complaint alleges that "Immediately to the east of said crossing heavy earth moving equipment was in operation creating unusual and abnormal amounts of noise which tended to overshadow any noise being made by said locomotive," the answer categorically denies this allegation and alleges, "there was nothing to prevent plaintiff's intestate from  *  *  *  hearing the whistle of the train." What would otherwise be a damaging admission in the complaint has thus been obliterated by the answer.

Taking the evidence, together with these allegations in the pleadings, in the light most favorable to the plaintiff, it is sufficient if believed, to permit a jury to find that the defendant operated its locomotive to and upon this crossing without giving any signal whatever of its approach thereto. There is also ample evidence to support a finding that this was a crossing at which an embankment obstructed the view of a northbound traveler upon the highway, a fact of which the railroad necessarily had notice. The railroad was, therefore, under a duty to give to such traveler notice of the approach of its locomotive to such crossing. If it failed to do so, it was negligent. *Cox v. Gallamore, supra,* and cases there cited.

This Court has held that the proof of a failure of automatic signals to function at a given moment is not sufficient of itself to show negligence by a railroad. *Johnson v. R. R.,* 255 N.C. 386, 121

KINLAW v. R. R.

S.E. 2d 580, 90 A.L.R. 2d 344. This is especially true here in view of the allegation in the complaint, admitted in the answer, that Brown Paving Company interfered with the operation of the signals. However, the operation of a locomotive to and upon a blind crossing of a main highway with no notice whatever of its approach is a lack of due care for the safety of users of the highway. The plaintiff's evidence, when considered in the light most favorable to her, is sufficient to support such a finding.

A judgment of nonsuit may not be sustained on the ground of contributory negligence by the deceased unless the plaintiff's own evidence, interpreted in the light most favorable to the plaintiff, shows that negligence by the deceased was one of the proximate causes of his injury and death so clearly that no other conclusion can reasonable be drawn therefrom. *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360; *Bondurant v. Mastin,* 252 N.C. 190, 113 S.E. 2d 292. We do not have in this record the defendant's version of how the collision occurred and, if we did, it could not be considered upon a motion for judgment of nonsuit except insofar as it might be favorable to the plaintiff.

There is no evidence in this record to show the manner in which the deceased approached the crossing, except that when approximately 150 feet therefrom he was driving at a speed not in excess of 15 miles per hour. He was proceeding on a substantial downgrade with a heavy machine. There is no evidence that he saw, or should have seen, the approaching locomotive in time to stop his machine before it reached the crossing. As above stated, there is no evidence in this record to show that the defendant gave any signal by any means whatever of the approach of the locomotive before it came into the view of the deceased. There is no evidence in this record that the automatic signal lights erected at the crossing were flashing. All the evidence in the record on that point indicated they were not.

In *Cox v. Gallamore, supra,* there were no automatic signals erected at the crossing. We said there that it is the duty of the driver of a vehicle approaching a crossing, of the existence of which he has notice, to reduce his speed so that he can look along the track and see that no train is approaching before he proceeds onto the crossing. Nothing else appearing, the failure of the driver to operate his vehicle at a speed and with a lookout such that he can bring it to a stop before reaching a crossing in time to collide with an approaching train is negligence by the driver. However, in this record something else appears. Here, the record, accepting the evidence of the plaintiff as true, shows that there were erected at the crossing devices which were designed to give automatic signals of the ap-

proach of the train, and upon the device facing the deceased there was a sign directing users of the highway to stop when the flashing lights appeared. The evidence of the plaintiff, if believed, will support the inference that these lights did not work in this instance.

In *Johnson v. R. R., supra,* Moore, J., speaking for the Court, said:

> "The mere momentary failure of an automatic signaling device to operate upon the occasion of an accident is not evidence of negligence on the part of the railroad company. *Res ipsa loquitur* has no application in such circumstances. But is proper to consider such failure in measuring the care exercised by the traveler in negotiating the crossing, and it is therefore relevant on the question of contributory negligence. A traveler on a highway has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when from a safe position such looking and listening will suffice to warn him of danger. Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury." (Citations omitted throughout.)

When the *Johnson* case was again before this Court in 257 N.C. 712, 127 S.E. 2d 521, Moore, J., repeated the above statement and added:

> "We are of the opinion that the failure of automatic signal lights at a railroad crossing to work has the tendency to abate the ordinary caution of a traveler on the highway, and that he has the right to place some reliance on such failure. In the absence of other timely warning, it would seem that it is an implied permission to proceed in those cases in which the traveler has taken reasonable precautions and made reasonable observations under the circumstances."

There is no evidence in this record to show any failure by the deceased to keep a lookout, or that he approached the crossing at a speed which was unreasonable in the light of the circumstances known to him. The judgment of nonsuit cannot be sustained on the ground of contributory negligence.

There remains to be considered the contention of the appellee that the judgment of nonsuit was proper for the reason that the action was not instituted within the time allowed by G.S. 1-53. That

statute and G.S. 28-173 were amended in 1951 so as to remove from the latter section the provision previously contained therein fixing the period of time in which an action for damages for wrongful death must be instituted and so as to make such action subject to the two year statute of limitations set forth in G.S. 1-53. The effect of the amendment was to make the time limitation a statute of limitations and no longer a condition precedent to the right to bring and maintain the action. *Graves v. Welborn, supra; McCrater v. Engineering Corp.*, 248 N.C. 707, 104 S.E. 2d 858.

G.S. 1-593 provides:

> "The time within which an act is to be done, as provided by law, shall be computed by excluding the first and including the last day. If the last day is Saturday, Sunday or a legal holiday, it must be excluded."

G.S. 103-4 provides that the first Monday in September of each and every year is a public holiday. In *Oxendine v. Lowry*, 260 N.C. 709, 133 S.E. 2d 687, and in *Weavil v. Myers*, 243 N.C. 386, 90 S.E. 2d 733, this Court took judicial notice of the relationship of certain hours to sunrise and sunset on specified dates in North Carolina. Upon the same principle, courts will take judicial notice of the concurrence of days of the week with days of the month in any year — at least, in a year not unreasonably distant. 31A C.J.S., Evidence, § 100. Consequently, we take notice of the fact that 2 September 1962, the last day of the two year period beginning with the death of the plaintiff's intestate, was Sunday and that the following day was the first Monday in September, a public holiday. This action was instituted on 4 September 1962 by the issuance of summons and, therefore, was instituted within the time allowed by G.S. 1-53. Thus, the judgment of nonsuit may not be sustained on the ground of the statute of limitations.

In holding, as we do, that the allowance of the motion for judgment of nonsuit upon the evidence set forth in the record before us was error and that this action must be remanded to the superior court for a new trial, we, of course, do not express any opinion as to what were the facts with reference to this collision. They must be determined upon the evidence which will be presented at the new trial of the action. The credibility of the witnesses who will then testify is to be determined by the jury at that trial. The sufficiency of the evidence then introduced to raise a question for the jury must be determined in the light of that evidence by the judge then presiding.

Reversed.