I. C. EARNHARDT, Administrator of the Estate of Herbert Hoover Earnhardt

v.

SOUTHERN RAILWAY COMPANY.

Civ. No. C–92–G–66.

United States District Court
M. D. North Carolina,
Greensboro Division.

March 14, 1968.

586

Schoch, Schoch & Schoch, John Haworth, High Point, N. C., for plaintiff.

McLendon, Brim, Brocks, Pierce & Daniels, Greensboro, N. C., for defendant.

OPINION

HAYES, District Judge:

The motion for a directed verdict against plaintiff on contributory negligence will not be granted unless the evidence of plaintiff together with the inferences reasonable minds might deduce therefrom establish that he was contributorily negligent which was a proximate cause of his injury.

The failure to stop and walk around where he could see in Baltimore and O.

R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 established a new standard of conduct for injuries at crossings. North Carolina followed it in Harrison v. North Carolina R. Co., 194 N.C. 656, 140 S.E. 598. The Goodman case created so much confusion in the State and Federal courts that it was substantially limited in Pokora v. Wabash R. Co., 292 U.S. 624, 54 S.Ct. 346, 78 L.Ed. 544. The Harrison case was not followed in Moseley v. Atlantic Coast Line R. Co., 197 N.C. 628, 150 S.E. 184; Butner v. Atlantic & Y. R. Co., 199 N.C. 695, 155 S.E. 601; Keller v. Southern R. Co., 205 N.C. 269, 171 S.E. 73; White v. North Carolina R. Co., 216 N.C. 79, 3 S.E.2d 310. There are numerous North Carolina cases in which a nonsuit on contributory negligence was held to be a matter of law and about the same number holding it to be a jury question. G.S. § 20–143 provides "failure to stop the vehicle at a grade crossing shall not be considered contributory negligence per se."

Plaintiff's intestate was fully aware of this crossing; of the automatic signals to operate when a train was approaching from North or South; of the custom of the defendant to give the crossing signals by blowing the horn (1 long, 2 shorts and a long) and ringing the bell. He knew the crossing involved the defendant's double track railroad; South bound trains used the West track and the North bound trains used the East track.

Fifteen hundred feet North of this crossing is a crossing signal sign on the West side of the track normally on the engineer's side of the train. In this instance three diesel engines were pulling a special freight train consisting of one hundred freight cars, but the lead engine had its front end coupled to the engine behind it and this caused the engineer to be seated on the left where he was unable to see the signal post.

The depot is about 25 feet to the West of the track and about 50 feet North of the highway which obstructed the view of a southbound train until the traveler got by the depot 25 feet from the track

at which time he could see up North for almost 1500 feet.

An eye witness for plaintiff who was approaching the crossing from the opposite side testified that the first blast of the engine's horn was when the lead engine was parallel with the depot building; that the bell was not ringing and that the automatic signals were not flashing. This witness observed the deceased when he left Highway 29 on the hill and came down to the crossing; that he was in a pickup truck, coming at a speed of 15 to 20 miles an hour and was looking straight ahead. He didn't see him slow down, yet his truck left a skid mark 11 feet long. The front of the engine hit the truck, knocked it around and killed the driver.

The defendant contends the deceased was guilty of contributory negligence as a matter of law because he did not stop when he was 25 feet from the track where he could have seen the train if he had looked.

Ordinarily that would be true in North Carolina but here we have extenuating circumstances which relax the diligence required of the traveller. The jury could reasonably conclude he was listening for crossing signals but they were not given and looking for the automatic signals which normally would warn him if a train was approaching and at the time he got within 25 feet of the track he was misled by the failure of the automatic signals and the failure of the defendant to give any warning of any kind of the train which approached at 60 miles per hour or 88 feet per second.

■ The evidence permits the inference that he did look in time to discover the approaching train long enough to apply his brakes and leave a skid mark of 11 feet. The test is whether a reasonably prudent man, knowing the custom of the crossing signals by bell and whistle and also the automatic signals, would approach the track in the reasonable belief that no train was approaching.

In Kinlaw v. Norfolk Southern Ry. Co. 269 N.C. 110, at page 118, 152 S.E. 2d 329, at page 335, Justice Lake quotes with approval from Johnson v. Southern Ry. Co., 257 N.C. 712, 127 S.E.2d 521; "We are of the opinion that the failure of automatic signal lights at a railroad crossing to work has the tendency to abate the ordinary caution of a traveler on the highway, and that he has the right to place some reliance on such failure. In the absence of other timely warning, it would seem that it was an implied permission to proceed in those cases in which the traveler has taken reasonable precautions and made reasonable observations under the circumstances." In the Kinlaw case the automatic lights did not flash. The court there held: "There is no evidence in this record to show any failure by the deceased to keep a lookout, or that he approached the crossing at a speed which was unreasonable in the light of the circumstances known to him. The judgment of nonsuit cannot be sustained on the ground of contributory negligence."

■ The deceased was on a hill which he descended to reach the crossing. If the customary signals had been given it is reasonable to conclude that he would have heard them in ample time to stop. Since the plaintiff's evidence shows the signals were not given he is not to blame for not hearing them. A reasonably prudent man familiar with the crossing and the signals could not reasonably foresee that a special train would emerge from behind the depot at 60 miles an hour without any warning whatsoever. The one blast when the lead engine was parallel with the depot was too late to constitute a warning. Under the circumstances of this case a reasonably prudent person would conclude that no train was approaching the crossing.

The motion for a directed verdict is denied as is the motion for a new trial. Judgment will be entered in accordance with the verdict.