WILLIAM V. JOHNSON v. SOUTHERN RAILWAY COMPANY
AND ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 October 1962.)

**1. Appeal and Error § 60—**

Decision on a former appeal that there was sufficient evidence of negligence to be submitted to the jury and that the evidence did not disclose contributory negligence as a matter of law, constitutes the law of the case and precludes nonsuit upon substantially the same evidence, but is not conclusive if the evidence upon the second trial is materially different from that of the first. In the present case, the evidence at the two trials upon the issue of contributory negligence *is held* not sufficiently different in material aspects as to justify a different conclusion.

**2. Railroads § 5— Evidence held insufficient to establish contributory negligence as a matter of law on part of motorist at railroad crossing.**

Evidence tending to show that the automatic signal lights at a railroad crossing were not working at the time plaintiff approached the crossing in his truck, that plaintiff stopped his vehicle some 30 feet from the crossing and looked and listened without seeing or hearing an approaching train, but that his view of the track, except for a distance of 75 feet, was obstructed at that point by a box car on a spur track some 10 to 12 feet from the mainline track, that plaintiff proceeded slowly onto the crossing, that he did not rely entirely upon the absence of the automatic signal lights but continued to look for an approaching train, although his main attention was upon the highway, and that he was struck by a train which entered the crossing without warning signal by bell or whistle, *is held* not to show contributory negligence as a matter of law on the part of plaintiff.

**3. Same—**

The failure of automatic signal lights at a railroad crossing, in the absence of other timely warning, while not warranting a motorist in entering blindly upon the crossing, does constitute an implied permission to a motorist to proceed upon the crossing in those cases in which the motor-

ist has taken reasonable precaution and made reasonable observation under the circumstances, and therefore the absence of signal lights is properly considered upon the question of such motorist's contributory negligence.

APPEAL by plaintiff from *Stevens, J.*, May 1962 Term of GATES.

Action by plaintiff to recover damages suffered by him when the pickup truck he was driving was struck by a freight train at a grade crossing in Roduco, N. C., about 10:20 A.M. on 24 January 1960. The freight was a Southern Railway Company train and was being operated over the tracks of the Atlantic Coast Line Railroad Company by permission of the latter company.

From judgment of nonsuit plaintiff appeals.

*Phil P. Godwin, John H. Hall and Thos. L. Woodard for plaintiff, appellant.*

*Joyner & Howison and Walton K. Joyner for defendant Southern Railway Company, appellee.*

*Rodman & Rodman and Godwin & Godwin for defendant Atlantic Coast Line Railroad Company, appellee.*

MOORE, J.   This is the second appeal we have heard in this cause. In the first trial of this case in the Superior Court of Gates County, at the March Term 1961, judgment of nonsuit was entered at the close of plaintiff's evidence. Plaintiff's appeal was heard at our Fall Term 1961, and we were of the opinion that the evidence made out a *prima facie* case of actionable negligence on the part of the defendants, and the issue of contributory negligence was for the jury. We reversed the judgment of nonsuit. *Johnson v. R.R.*, 255 N.C. 386, 121 S.E. 2d 580.

The case again came on for trial in Superior Court at the May Term 1962. Plaintiff and defendants offered evidence. At the close of all the evidence plaintiff was again nonsuited. Hence the present appeal.

When it has been determined on appeal that the evidence warrants the submission of the case to the jury, such determination of the Supreme Court is the law of the case and, in a subsequent hearing upon substantially the same evidence, the refusal of the trial court to submit the case to the jury is error. *Alexander v. Brown,* 239 N.C. 527, 80 S.E. 2d 241; *Maddox v. Brown,* 233 N.C. 519, 64 S.E. 2d 864. But where the evidence on the subsequent trial is materially different from that on the former trial, the decision of the Supreme Court on the former appeal as to the sufficiency of the evidence is not conclusive *Warren v. Insurance Co.,* 217 N.C. 705, 9 S.E. 2d 479; *George v. R.R.,* 217 N.C. 684, 9 S.E. 2d 373

Our inquiry on the present appeal is whether upon the retrial the evidence, considered in the light most favorable to plaintiff, is different in material aspects from that of the former trial so as to justify nonsuit.

The opinion on the former appeal, cited above, contains a summary of the pleadings and plaintiff's evidence at the first trial. For an understanding of the general facts and circumstances of the case reference should be had to our former opinion. We summarize herein only such of the evidence adduced at the trials as is necessary to a decision.

There was evidence at the second trial that the train failed to signal its approach, failed to give warning by whistle, gong or bell, and that the automatic signal light at the crossing was not working. Defendants concede that there is sufficient evidence of actionable negligence on their part to withstand the nonsuit motion, but they contend that the evidence on the present record discloses contributory negligence on the part of plaintiff as a matter of law.

The railroad runs north and south, the highway runs east and west. Plaintiff entered the highway about 60 feet east of the crossing and headed west. He stopped about 30 feet before reaching the mainline track and looked in both directions and listened. The railroad station is about 300 feet north of the crossing and is east of the track. A spur track runs between the station and the mainline track, parallels the latter, and ends near the highway but does not cross it. There was a housed box car standing on the spur track about 50 feet north of the highway. There was another box car on the spur track alongside the station. The railroad is straight and level for about two miles northwardly from the crossing. After leaving the point 30 feet from the crossing plaintiff, without stopping again, drove upon the track and was struck by the train.

Plaintiff's evidence at the first trial tends to show, among other things, the following additional facts: From his stopped position 30 feet from the crossing, plaintiff could see about 75 feet along the mainline south of the first box car, and had a view of the mainline as far as the station, about 300 feet. The only obstruction within the 300 feet was the first box car. There was a substantial opening between the first box car and the car standing alongside the depot. Upon seeing and hearing no train approaching, plaintiff moved forward in low gear, and as he did so the view between the box cars decreased and at length was obstructed altogether. The mainline and the spur track were only 6 feet apart. The box car was wider than the spur track. The truck seat was 5 to 6 feet from the front bumper of the pickup.

From this evidence we were of the opinion that plaintiff stopped his vehicle and looked and listened at the best vantage point available

to him before going upon the track, a point from which he could see the mainline track for 300 feet to the north, and that his view became more and more obscured as he approached the track. As to whether plaintiff in the exercise of due care should have stopped his pickup again and made observations at a closer but safe distance from the track, we considered it a matter for jury determination. The questions seemed debatable, (1) whether, in the absence of any active warning of the approach of the train, plaintiff in the exercise of reasonable care for his own safety should have stopped and made observations at a point nearer the crossing, (2) and if so, whether, considering the obstruction of his view, such conduct would have reasonably disclosed the peril, and (3) whether under the circumstances plaintiff could reasonably rely upon the failure of automatic signals and warnings. We therefore held that it was a case for the jury.

At the second trial plaintiff testified as follows (quoted verbatim, but not in the same sequence): "As I came from the point about 60 feet east of the track to the point about 30 feet from the track, I could see the track between the box cars. . . . I stopped at a point where the first box car and the second box car had sort of gotten in line so I couldn't see anything at that point. The way I was sitting, looking at an angle by the box car, I could see about 75 feet north up the mainline track. . . . (F)rom the time I let out the clutch and pulled on up to the track, I glanced in the direction of north and south, but I was centering my attention primarily on the road. I never saw the train that hit me. I reckon the distance between the east rail of the mainline and the west rail of the spur track is about 10 or 12 feet. (According to defendants' evidence it is by actual measurement 9 feet 11 inches.) It is about 5 or 6 feet from the seat in the truck to its front bumper. The box car had an overlap of about 2½ feet over the rails."

In our opinion the evidence at the second trial, considered in the light most favorable to plaintiff, is somewhat less favorable to him than the evidence at the first trial. The evidence at the first trial permits the inference that when plaintiff stopped 30 feet from the crossing he had a view of the mainline track for more than 300 feet north of the crossing, that he could see between the two box cars on the spur track, and as he approached the crossing the view was more and more obscured. He testified at the second trial that he could see the track between the box cars before he came to a stop, but from his stopped position his view to the north was totally obstructed except for a distance of 75 feet. The evidence at the first trial indicated that the distance between the mainline and spur tracks was 6 feet; at the second trial plaintiff testified that the distance was 10 to 12 feet. The box car had an "over-hang" of 2½ feet; the seat of the pickup was 5

to 6 feet from the front bumper. Accepting the measurement given at the second trial as true, plaintiff might have stopped just short of the mainline track and gained a clear view up the track to the north for a distance which would have permitted him to see the oncoming train in time to avoid collision.

From these differences in the evidence at the two trials the learned trial judge undoubtedly concluded that there was a material change and on motion to nonsuit the case was controlled by the decisions in *Parker v. R.R.*, 232 N.C. 472, 61 S.E. 2d 370, and *Boyd v. R.R.*, 232 N.C. 171, 59 S.E. 2d 785. We do not agree.

Mathematical possibilities and the results of exact measurements, showing minimal space in which observations could be made, should not be controlling factors in determining whether nonsuit should be allowed as a matter of law.

In our former opinion in this case (*Johnson v. R.R.*, 255 N.C. 386, 388-9) we stated the following principles of law and cited authorities: "The mere momentary failure of an automatic signaling device to operate upon the occasion of an accident is not evidence of negligence on the part of the railroad company. . . . But it is proper to consider such failure in measuring the care exercised by the traveler in negotiating the crossing, and it is therefore relevant on the question of contributory negligence. . . . A traveler on a highway has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. . . But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when from a safe position such looking and listening will suffice to warn him of danger. . . . Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury."

According to plaintiff's evidence, he stopped and made such observations as he could to determine whether he could cross in safety. The view to the north was obstructed. There were no audible or visible warnings of the approach of the train. He moved forward slowly centering his attention primarily on the road. The double blinker lights of the automatic warning device near the track were not blinking. The inscription on the blinker read: "Railroad Crossing. Stop on Red Signal."

We are of the opinion that the failure of automatic signal lights at a railroad crossing to work has the tendency to abate the ordinary caution of a traveler on the highway, and that he has the right to place some reliance on such failure. In the absence of other timely warning, it would seem that it is an implied permission to proceed in those cases

in which the traveler has taken reasonable precautions and made reasonable observations under the circumstances. In the case at bar plaintiff stated: "I did not rely on the signal light alone; I did not rely on it fully." But we do not interpret this to mean that he paid no attention to the light and did not rely on it at all. He stated that it was not working. It would appear that it was one of the several circumstances observed and relied on by him. Where the view of a traveler is obstructed, as in this case, and the automatic signal light is not working, and there is no other timely warning of the approach of a train, the question as to whether or not the traveler, in proceeding onto the crossing, exercises the care of an ordinarily prudent man is one for the jury.

The judgment below is
Reversed.