EDNA H. NEAL, ADMINISTRATRIX OF THE ESTATE OF JERRY AUGUSTUS NEAL v. N. C. BOOTH AND SEABOARD COAST LINE RAILROAD COMPANY

No. 16

(Filed 6 May 1975)

1. Railroads § 5— crossing accident — contributory negligence by motorist

In a wrongful death action arising from a railway crossing accident, plaintiff's evidence failed to disclose that her intestate was contributorily negligent as a matter of law where it tended to show: defendants' train approached the unguarded crossing from the east at 80 mph without any signal from the train or the electrical warning device at the crossing; as the intestate drove slowly toward the tracks he faced the afternoon sun which was just to the right of the electrical warning signal; his view of the tracks to the east was obstructed by the railroad's depot, automobiles parked adjacent thereto, and boxcars on the side track, the first of three tracks at the crossing; because of these obstructions intestate was unable to see the train approaching on the third track until he crossed the side track; in the 21 feet between the tracks he was unable to stop; and the train struck the left side of his automobile.

2. Railroads § 6— absence of warning signals — admissibility of evidence

Testimony that a person nearby who could have heard and did not hear the sound of a whistle or the ringing of a bell, or could have seen the flashing of lights and did not see them, is some evidence that no such signal was given.

3. Railroads § 5— approaching train — right of way — warnings

A train has the right of way at a public crossing, but it is the duty of the engineer to sound the customary warnings of the train's approach.

**4. Railroads § 5— approaching train — motorist's reliance on warning**

A traveler on the highway has the right to expect timely warning of an approaching train, but the engineer's failure to give such warning will not justify an assumption that no train is approaching.

**5. Railroads § 5— approaching train — duty of motorist**

Before going upon the track, and at a point where lookout will be effective, a traveler must look and listen in both directions for approaching trains if not prevented from doing so by the fault of the railroad company; he has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed, but the fact that an automatic warning signal is not working does not relieve him of the duty to look and listen for approaching trains when, from a safe position, such actions will suffice to warn him of danger.

**6. Railroads § 5— crossing accident — nonsuit — exact measurements**

In an action arising out of a railroad crossing accident, mathematical possibilities and the results of exact measurements showing minimal space in which observations could be made should not be controlling factors in determining whether nonsuit should be allowed as a matter of law.

ON *certiorari* to review the decision of the Court of Appeals, reported in 22 N.C. App. 415, 206 S.E. 2d 766 (1974), affirming the judgment of *Hobgood, J.,* directing verdict for defendants at the 14 January 1974 Session of the Superior Court of JOHNSTON.

Action for wrongful death. Plaintiff's intestate, Jerry Neal, aged 16, was killed instantly at 4:38 p.m. on 15 November 1969 when the automobile he was operating was struck by defendant Seaboard Coast Line Railroad's train No. 85 at a grade crossing in the town of Kenly where the railroad's tracks intersect N. C. State Highway No. 222. Defendant Booth was the engineer on train No. 85.

Plaintiff alleged that the death of her intestate was proximately caused by the negligence of defendants in that (1) the Railroad failed to provide a crossbar or gate to obstruct Highway No. 222 when a train was approaching the intersection of its tracks with the highway; (2) the Railroad maintained its depot in such close proximity to its tracks and Highway No. 222 that it obstructed a traveler's view to the east as he traveled south toward the crossing; and (3) the train approached the much traveled crossing at a highly dangerous and excessive speed and without giving any warning of its approach. Defendants denied that they were guilty of any negligence and alleged

that Jerry Neal proximately caused or contributed to his death by driving upon the crossing in the path of the approaching train when, by the exercise of proper care, he could have seen and heard it coming.

Stipulations establish that at the time of the collision defendant Booth was the agent and employee of defendant Railroad, and that he was operating the train at a speed of approximately 80 mph.

Evidence for plaintiff tends to show:

Defendant Railroad maintains three parallel tracks which run in an east-west direction through the business district of Kenly. The rails of each track are five feet apart, and the distance from the center line of one track to the center line of the next is thirteen feet. The north track is a service or side track located within three feet of the depot's platform ramp. The other two tracks are main lines. Southbound trains run over the middle track; northbound trains, over the south track. In Kenly, Highway No. 222 is denominated Second Street. It is the main business street and intersects the railroad tracks at right angles in the center of town. This crossing is heavily traveled— especially on Saturday. On 15 November 1969 there were no gates or crossbars to prevent access to the crossing when a train was approaching.

The Railroad's station, a building 30.5 feet by 107.15 feet and 20 feet high, is located 42.1 feet north of the center line of the southernmost track and 52.5 feet east of the center line of Highway 222. The space between the west end of the depot and the highway is a parking area. Streets on each side of the Railroad, known respectively as North Railroad Street and South Railroad Street, parallel the tracks and cross Highway 222. The north wall of the station is 27 feet from the center line of North Railroad Street.

On the northwest and southeast corners of the intersection of the tracks and Highway 222, defendant Railroad maintains an electrical warning signal approximately 16-18 feet from the first track. This signal is a stand, 9-10 feet high, with four hooded lights, two facing north and two facing south.

On Saturday afternoon, 15 November 1960, about 4:38 p.m., Jerry Neal drove his automobile westerly along North Railroad Street to its intersection with Highway 222. After stopping at a

stop sign he made a left turn into the highway and proceeded south at a speed of about 5 mph toward the crossing 65 feet away. At that time his view of the tracks to the east was obstructed by the depot, by automobiles parked between it and the highway, and by two boxcars on the side track near the east end of the depot. The sun was then about eight degrees above the horizon and just to the right of the warning lights which faced him.

Jerry Neal drove onto the crossing, and on the third (the southernmost) track his automobile was struck on the left side by train No. 85, which approached the crossing from the east at 80 mph. A witness, who was purchasing gas at a pump on the south side of the crossing 100 feet from the point of collision, testified that she heard the impact but prior thereto she had heard no horn or whistle from the approaching train; nor did she hear any warning or see any flashing lights from the electric signal at the crossing. At the time of the collision the Chief of Police of Kenly was traveling west on South Railroad Street approaching its intersection with Highway No. 222. He testified that he saw debris from the collision flying in the air; that he did not hear any horns, signals or other warnings— nor did he hear the train. A witness, who testified that she was about 150 feet from the point of collision and "able to see the collision," said that after the collision the train carried the car down the track to the next intersection; that prior to the impact she heard no signals or warning that a train was approaching. Another witness, who heard the train and collision, testified positively that prior thereto "there were no bells, no horns, or whistles."

At the close of plaintiff's evidence, defendants moved for a directed verdict upon the grounds that plaintiff's evidence failed to show actionable negligence on the part of either of the defendants but, on the contrary, established as a matter of law that the negligence of plaintiff's intestate was the sole cause or a contributing cause of the collision which resulted in his death.

Judge Hobgood granted defendants' motion and, on appeal, the Court of Appeals affirmed. It held (1) that plaintiff's evidence, considered in the light most favorable to her, made out a prima facie case of defendants' actionable negligence, but (2) it also established intestate's contributory negligence as a matter of law since "it tends to show that . . . [intestate] was

Neal v. Booth

traveling at the rate of 5 miles per hour and that his view was obstructed until he was 21 feet from the southernmost track." We granted certiorari.

*Mast, Tew & Nall and W. R. Britt for plaintiff appellant.*

*Maupin, Taylor & Ellis by Richard C. Titus for defendant appellees.*

SHARP, Chief Justice.

The Court of Appeals correctly held that plaintiff's evidence in this case is sufficient to establish prima facie that the negligence of defendants was a proximate cause of intestate's death. Thus, this appeal presents only the question whether the Court of Appeals erred in holding that plaintiff's evidence also established her intestate's contributory negligence as a matter of law. Defendant's motion for a directed verdict on the ground of intestate's contributory negligence cannot be sustained unless plaintiff's evidence, taken as true and interpreted in the light most favorable to plaintiff, so clearly shows intestate's negligence to have been a proximate cause of his death that it will support no other conclusion as a matter of law. *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971); *Perkins v. Cook,* 272 N.C. 477, 158 S.E. 2d 584 (1968).

[1] Taking plaintiff's evidence as true and giving her the benefit of every favorable inference which can reasonably be drawn from it, the evidence is sufficient to permit (but not to compel) the following findings of fact:

On 15 November 1969 at 4:38 p.m., defendants' train No. 85 approached the much traveled, unguarded highway crossing in the town of Kenly from the east at a speed of 80 mph without any signal from the train or the electrical warning device at the intersection. At that time plaintiff's intestate also approached the crossing after having stopped and turned left into the highway from an intersecting street 65 feet north of the crossing. As he drove slowly south he faced the afternoon sun, which was just to the right of the electrical warning signal. His view of the tracks to the east was obstructed by the Railroad's depot, automobiles parked adjacent thereto, and boxcars on the side track, the first of the three tracks at the crossing. Because of these obstructions intestate was unable to see the train approaching on the third track until he had crossed the side track.

In the 21 feet between the two tracks he was unable to stop. The train struck the left side of his vehicle, killing him instantly.

At this stage of the proceeding defendants' version of how and why the accident occurred is not in the record. Only plaintiff's evidence has been heard, and certain opposing inferences are permissible from it. We, of course, express no opinion as to its veracity or weight. However, assuming the facts set out above, we hold that the evidence does not establish intestate's contributory negligence as a matter of law and that the directed verdict was erroneously entered. *See Brown v. R. R. Co.* and *Phillips v. R. R. Co.*, 276 N.C. 398, 172 S.E. 2d 502 (1970); *Kinlaw v. R. R.*, 269 N.C. 110, 152 S.E. 2d 329 (1967); *Johnson v. R. R.*, 257 N.C. 712, 127 S.E. 2d 521 (1962); *Johnson v. R. R.*, 255 N.C. 386, 121 S.E. 2d 580 (1961).

The cases cited above establish the following principles which are applicable to this case:

[2]  Testimony that a person nearby who could have heard and did not hear the sounding of a whistle or the ringing of a bell, or could have seen the flashing of lights and did not see them, is some evidence that no such signal was given. *Kinlaw v. R. R., supra* at 116, 152 S.E. 2d at 333-334.

[3-5]  The train has the right of way at a public crossing, but it is the duty of the engineer to sound the customary warnings of the train's approach. A traveler on the highway has the right to expect timely warning, but the engineer's failure to give such warning will not justify an assumption that no train is approaching. Before going upon the track, and at a point where lookout will be effective, "a traveler must look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company." He has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when, from a safe position, such looking and listening will suffice to warn him him of danger. "Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury." *Johnson v. R. R.*, 255 N.C. at 388-389, 121 S.E. 2d at 581-582.

**[6]** "Mathematical possibilities and the results of exact measurements showing minimal space in which observations could be made, should not be controlling factors in determining whether nonsuit should be allowed as a matter of law." *Johnson v. R. R.,* 257 N. C. at 716, 127 S.E. 2d at 524.

The decision of the Court of Appeals is reversed, and the case is remanded with directions that it be returned to the Superior Court for a trial *de novo*.

Reversed.