THOMAS EDWIN TOWNSEND v. NORFOLK AND SOUTHERN RAILWAY COMPANY, SUCCESSOR CORPORATION TO CAROLINA AND NORTHWESTERN RAILWAY, AND JOHN REID

No. 7725SC315

(Filed 7 March 1978)

1. **Railroads § 5.8— crossing accident—no contributory negligence as a matter of law**

    In an action to recover damages for injuries sustained in a collision between defendant's train and plaintiff's tractor-trailer, the evidence did not disclose that plaintiff was contributorily negligent as a matter of law where it tended to show that there were no electrical warnings at the railroad crossing; plaintiff stopped, looked and listened before he drove his rig upon the first of defendant's tracks; plaintiff continued to maintain a proper lookout as he traversed the 47 feet from the first track, which was a side track, to the main track; and plaintiff's failure to observe defendant's train approaching from his left was caused proximately by the obstructions to plaintiff's visibility along defendant's tracks.

2. **Rules of Civil Procedure § 59— damages for personal injury—verdict not excessive**

    In an action to recover damages for injuries sustained in a collision between defendant's train and plaintiff's tractor-trailer, the trial court did not err in denying defendant's motion for a new trial on the ground that the verdict of $151,835 was excessive where the evidence tended to show that plaintiff, who was 45 at the time of the collision, had driven tractor-trailer rigs for 25 years and during that period had enjoyed good health; as a result of the collision plaintiff suffered internal injuries, hypertension, a broken nose, and a back injury; plaintiff was hospitalized and incurred medical expenses of over $7000; plaintiff is currently in poor health and will continue to undergo medical treatment for the remainder of his life; and plaintiff has been unable to work since the accident and his disabilities are permanent.

    Judge BRITT dissenting.

APPEAL by defendants from *Snepp, Judge.* Judgment entered 28 January 1977 in Superior Court, CALDWELL County. Heard in the Court of Appeals 7 February 1978.

Civil action wherein plaintiff seeks to recover $750,000.00 for injuries sustained in a collision between a train owned and operated by the defendants and a tractor-trailer operated by the plaintiff. At the conclusion of the presentation of evidence, issues were submitted to the jury and answered as follows:

1. Was the plaintiff injured by the negligence of the defendants?

Answer: Yes.

2. If so, did the plaintiff by his own negligence contribute to his injuries?

Answer: No.

3. What amount, if any, is the plaintiff entitled to recover of the defendants?

Answer: $151,835.00.

Judgment was entered upon the verdict from which the defendants appealed.

*Wilson and Palmer, by Hugh M. Wilson, for the plaintiff appellee.*

*Patrick, Harper and Dixon, by Bailey Patrick and F. Gwyn Harper, Jr.; Joyner and Howison, by W. T. Joyner and Henry S. Manning, Jr., for the defendants appellants.*

HEDRICK, Judge.

The defendants assign as error the denials of their timely motions for directed verdict and judgment notwithstanding the verdict. Defendants argue that the evidence establishes the contributory negligence of the plaintiff as a matter of law. In considering these assignments of error we note that the jury found the defendants negligent and this finding is not challenged by the defendants. Thus, the only question for determination with respect to these assignments is whether the evidence, "interpreted in the light most favorable to plaintiff, so clearly shows . . . [plaintiff's] negligence to have been a proximate cause of his . . . [injuries] that it will support no other conclusion as a matter of law." *Neal v. Booth*, 287 N.C. 237, 241, 214 S.E. 2d 36, 39 (1975).

[1] The evidence considered in this light tends to show the following: The collision from which this action grew occurred in Lenoir, North Carolina, at the intersection of Waycross Drive, which runs from east to west, and railroad tracks owned by the defendants, which run from north to south. A junction lies 300-400 feet south of the crossing at which a side track diverges from the main track, curving slightly to the east and then running roughly parallel with the main track across Waycross Drive. A distance of 47 feet separates the side track from the main track at the cross-

ing. A few feet west of the main track lie two other tracks which were not directly involved in the accident. There are no electrical signals at the crossing to warn motorists of approaching trains although there is a sign east of the crossing and a crossbuck between the side track and the main line.

The plaintiff in this action was employed as a truckdriver for Broyhill Industries at the time of the collision and had been so employed for six years. In this capacity he had become familiar with the railroad crossing on Waycross Drive. At approximately 12:30 p.m. on 7 September 1972 the plaintiff was returning from a long distance haul in an empty tractor-trailer rig owned by his employer. The weather was clear as the plaintiff turned onto Waycross Drive from Highway 321A and headed west towards the crossing. The plaintiff stopped his truck at a point 15 feet east of the easternmost track (the side track), which he considered to be the closest point from which he could safely view the tracks. The plaintiff provided the following decription of the scene from where he stopped:

> When I got there I stopped and looked both ways. To my right I saw a few small trees, not too many, along the side of the track. . . . There were a few trees to my right and just east of the railroad tracks and located along the right of way. . . . To my left from about 5 feet from the pavement there are solid trees here. These trees were to my left and east of the first track. . . . These trees on the east side of the track were mostly pine trees. The trees that I spoke of range from small bushes up to 10 to 12 feet high, some of them bigger than the others that are still there.

When the plaintiff saw that the tracks were clear and heard no whistles or bells which would indicate an approaching train, he resumed his travel across the side track at a speed of 5-10 m.p.h. At trial the plaintiff testified:

> The rig I was driving that day was 55 to 56 feet long. The distance between the first tracks and the second tracks that I crossed was 47 feet. I have measured that myself; it is 47 feet. I know from past experience from crossing that crossing that the back of my truck would not be off the first track before I got to the second track. There is not any way you can clear both tracks. . . . What I am saying is once I get on

this first track I am on the tracks until I clear the last of the four tracks.

The plaintiff also testified that the road on the crossing was extremely rough necessitating cautious driving at a low rate of speed. He proceeded across the side track and toward the main track, maintaining his speed at 5-10 m.p.h. and looking to the south as he drove. The plaintiff further testified as follows:

> As I was coming to my second track, then after I had crossed the first track coming up here . . . about halfway between these two tracks was a distance of about 47 feet, these bushes were real thick next to the main line track and some of them were as high as a good 8, 10 and 12 feet. I could not see in the southerly direction along those tracks where the trees were. As I looked in a southerly direction as I crossed the track, I did not see any train approaching. I could not see it from the obstructions of those trees. I don't believe that I could — no way.
>
> . . .
>
> . . . [T]he bushes to my left between the tracks were from 15 to 20 feet wide and I would say at least 30 feet down the track, up and down the tracks, north and south — around 30 feet or better. The height of these bushes and trees were from small bushes to some of 12 to 14 feet. From my position in the cab of the vehicle I was operating I could not see to the south down the railroad tracks over these bushes.

Nearing the main track the plaintiff continued to look to the south but also devoted considerable attention to maintaining control of his vehicle on the bumps and holes in the road. When he reached the main track he looked to the south through his windshield, and determining that no train was coming he proceeded across the track. The train collided with the truck and carried it to a point north of the intersection. The plaintiff suffered severe injuries in the accident.

Over the years our Supreme Court has decided many cases involving collisions between trains and automobiles or trucks. From these cases rules have evolved delineating the duties of motorists as they approach railway crossings. A driver of an automobile or truck is expected to stop at a point before the

crossing which yields a clear view of the tracks, and "look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company." *Johnson v. R.R.*, 255 N.C. 386, 388, 121 S.E. 2d 580, 582 (1961). "A traveler on the highway has the right to expect timely warning, but the engineer's failure to give such warning will not justify an assumption that no train is approaching." *Neal v. Booth, supra* at 242, 214 S.E. 2d at 39. "Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury." *Johnson v. R.R., supra* at 388-9, 121 S.E. 2d at 582.

The defendants have presented in their brief a mathematical computation which allegedly proves that the plaintiff could have seen the approaching train from the side track and before he reached the main line. On this basis the defendants contend that the evidence demonstrates that the plaintiff stopped the truck at a point where unobstructed observation was impossible; that he failed to stop or look as he crossed the side track from which he could have seen the junction approximately 300 feet to the south where the defendants' train was passing on the main track; and that he failed to stop or look immediately before he reached the main track where the view to the south was unobstructed. The defendants conclude that these alleged failures on the part of the plaintiff constitute contributory negligence as a matter of law.

We disagree with the defendants' conclusion. Our Supreme Court has instructed on several occasions that "[m]athematical possibilities and the results of exact measurements showing minimal space in which observations could be made, should not be controlling factors in determining whether nonsuit should be allowed as a matter of law." *Johnson v. R.R.*, 257 N.C. 712, 716, 127 S.E. 2d 521, 524 (1962); *Neal v. Booth, supra* at 243, 214 S.E. 2d at 40. This is particularly true in this case since the evidence with respect to speed, distance and visibility contains so many variables as to render mathematical calculations meaningless in determining whether any act or omission upon the part of plaintiff was contributory negligence as a matter of law. The factors which are controlling in this case are the obstructions to the plaintiff's view as he proceeded across the tracks, the rough road which required his utmost attention, and the fact that from the time he began crossing the tracks some portion of his rig was at

all times extended across the side track, making it dangerous for him to stop.

Thus, while the evidence raises inferences that the plaintiff drove the tractor-trailer rig upon the defendants' railroad tracks when he knew or by the exercise of reasonable care should have known that defendants' train was approaching from the south on the main track, and that such negligence was a proximate cause of the collision, we cannot say that such is the only conclusion reasonably deducible from the evidence. The evidence likewise gives rise to inferences that the plaintiff stopped, looked and listened before he drove the rig upon the first track, and that he continued to maintain a proper lookout as he traversed the 47 feet from the side track to the main track; and that plaintiff's failure to observe defendants' train approaching from the south was caused proximately by the obstructions to plaintiff's visibility along defendants' tracks. We hold that the court did not err in submitting the case to the jury and in overruling the defendants' motions for directed verdict and judgment notwithstanding the verdict.

Defendants also assign as error the denial of their motions for a new trial made pursuant to Rule 59 on grounds that the verdict was not justified by the evidence, and that the verdict was excessive. A motion to set aside the verdict and order a new trial is addressed to the discretion of the trial judge and "his ruling thereon is irreviewable in the absence of manifest abuse of discretion." *Britt v. Allen*, 291 N.C. 630, 635, 231 S.E. 2d 607, 611 (1977).

[2] The evidence with respect to damages tends to show the following: Plaintiff was 45 years of age when the collision occurred. He had driven tractor-trailer rigs for 25-26 years and during that period had enjoyed good health. As a result of the collision the plaintiff suffered internal injuries, hypertension, a broken nose, and a back injury. The plaintiff was hospitalized and incurred medical expenses of $7,035.14. He is currently in poor health and will continue to undergo medical treatment for the remainder of his life. He has been unable to work since the accident, and his disabilities are permanent.

We hold that the defendants have shown no abuse of discretion by the trial court in its denial of the defendants' motions. These assignments of error are overruled.

No error.

Judge WEBB concurs.

Judge BRITT dissents.

Judge BRITT dissenting:

I respectfully dissent to the majority opinion for the reason that I think the evidence established contributory negligence on the part of plaintiff as a matter of law.

While the burden of proof on the issue of contributory negligence is on the defendants, and directed verdict on the issue may not be entered if it is necessary to rely either in whole or in part on defendants' evidence, defendants' evidence which is not in conflict with that of plaintiff and which tends to explain plaintiff's evidence may be considered. 9 Strong's N.C. Index 3d, Negligence § 35.

Plaintiff testified that he was very familiar with the crossing in question; that he knew that the second set of tracks constituted the main line; that he stopped before crossing the first sidetracks; and that he then proceeded at a speed of five to ten m.p.h. to cross the first sidetracks, to traverse some 47 feet between them and the main line, and to drive upon the main line without stopping again.

One of the most critical points in the evidence related to the distance between the main line tracks and the bushes on plaintiff's left between the main line and the first sidetracks. Plaintiff's testimony on this point was vague but his testimony, together with evidence which was not in conflict with it but which tended to explain it, clearly established that there was sufficient clearance between the bushes and the main tracks for plaintiff to have seen the approaching train had he stopped immediately before reaching the main line and looked to his left.