Mansfield v. Anderson and Railway Co. v. Anderson

RAY M. MANSFIELD, PLAINTIFF v. DALE RAY ANDERSON, DEFENDANT AND REUBEN ANDERSON GALYEANS, DEFENDANT AND THIRD-PARTY PLAINTIFF v. DIMENSION MILLING COMPANY, INC., THIRD-PARTY DEFENDANT

AND

WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY, PLAINTIFF v. DALE RAY ANDERSON, DEFENDANT AND REUBEN ANDERSON GALYEANS, DEFENDANT AND THIRD-PARTY PLAINTIFF v. DIMENSION MILLING COMPANY, INC., THIRD-PARTY DEFENDANT

No. 7822SC972

(Filed 2 October 1979)

1. Railroads § 5— grade crossing—reciprocal duties of trainmen and motorists

When approaching a railroad grade crossing, both trainmen and travelers on the highway owe a reciprocal duty to keep a proper lookout and to exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid a collision.

Mansfield v. Anderson and Railway Co. v. Anderson

**2. Railroads § 5.4— duty of motorist to look in both directions**

While it is the duty of a railroad to give reasonable and timely warning of the approach of its train to a crossing, its failure to do so does not relieve a traveler on the highway of his duty to exercise due care for his own safety, and the highway traveler who knows or should know that he is approaching a railroad crossing may not proceed to and upon it without looking in both directions along the track merely because he has heard no signal of an approaching train.

**3. Railroads § 5.3— obstructed view at crossing—duty of motorist to reduce speed**

If a driver knows or should know that he is approaching a railroad crossing at which his view of the track is obstructed, he owes the duty to reduce his speed so that he can stop his vehicle, if necessary, in order to avoid a collision with an approaching train.

**4. Railroads § 5.8— obstructed view at grade crossing—failure of motorist to reduce speed sufficiently—contributory negligence**

The driver of a tractor-trailer which collided with a train at a grade crossing was contributorily negligent as a matter of law where his testimony showed that he was familiar with the crossing and knew that his view northward up the tracks to his right would be obstructed until he got within 3 or 4 feet of the tracks; he knew that his tractor-trailer was hauling a heavy load and that, even moving at only 3 to 4 miles per hour, a distance of 5 to 6 feet would be required in which to bring his vehicle to a stop; and when he reached the position where he knew he must be in order to see a safe distance up the track, he was moving at a speed which he knew would not permit him to stop his vehicle before it reached the crossing.

**5. Railroads § 5.2— instructions on negligence in failure to remove trees and bushes—harmless error**

In this action arising out of a railroad grade crossing accident, the trial court's instruction that plaintiff railway could be held negligent for failure to remove trees and bushes from the sides of the tracks if they obstructed the view of a traveler on the highway, if erroneous because there was no evidence showing such trees and bushes were on the railway's right-of-way, was not prejudicial to plaintiff railway where it was derivatively responsible for the negligence of its engineer in the operation of its train; the jury did not reach issues as to whether plaintiff railway was independently negligent for failure to keep its right-of-way clear of obstructions; and nothing in the record indicates that the instruction tended to bolster defendants' contentions of negligence.

**6. Railroads § 5.1— negligent operation of train not insulated by motorist's negligence**

A train engineer's negligence in operating a train too fast and in failing to give timely warning of its approach to a grade crossing was not insulated by the negligence of a motorist in failing to reduce the speed of his vehicle so that he could stop his vehicle before it reached the crossing after he reached a point where he could see whether a train was coming.

7. **Trial § 40— agency of driver — question not moot**

In an action arising out of a collision between a train and a tractor-trailer at a grade crossing, an issue as to whether the driver of the tractor-trailer was the agent of the owner was no longer moot where the appellate court held that the driver was contributorily negligent as a matter of law.

Judge MARTIN (Harry C.) dissenting.

APPEALS by plaintiffs and by defendant, Reuben Anderson Galyeans, from *Mills, Judge.* Plaintiffs appeal from judgment entered 23 May 1978 and defendant Galyeans appeals from said judgment and from order entered 27 June 1978 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 20 August 1979.

On the morning of 19 March 1976, between 8:00 and 9:00 a.m., a railroad engine owned by Winston-Salem Southbound Railway Company and being operated by its engineer, Ray M. Mansfield, collided with a tractor-trailer at the grade crossing where N.C. Highway 47 crosses the railroad tracks. The tractor-trailer belonged to Reuben Anderson Galyeans and was being operated by Dale Ray Anderson. It was carrying a load of lumber owned by Dimension Milling Company, Inc. As result of the collision Mansfield was injured, and the railroad engine, the tractor-trailer, and the lumber being carried thereon was damaged. Anderson was not injured.

These two civil actions were brought by Mansfield and by the Railway Company against Anderson and Galyeans to recover damages sustained by the plaintiffs as a result of the collision. The issues and pleadings in the two cases were substantially similar, and the parties stipulated that they be tried jointly.

In their complaints plaintiffs alleged that Anderson was the agent of Galyeans and that Anderson had been negligent in driving too fast, in failing to stop before crossing the tracks, and in failing to keep a proper lookout.

In his answer defendant Anderson denied negligence and pled contributory negligence on the part of Mansfield. Galyeans also denied negligence on the part of Anderson, and he counter-claimed against Mansfield and the Railway Company for damages to the tractor-trailer. He further denied that Anderson was acting as his agent or employee at the time the accident occurred and cross-claimed against Anderson, both for damages to the tractor-

trailer and for indemnity should Galyeans be found liable to the plaintiffs. In reply to Galyeans's answer, plaintiff Mansfield pled last clear chance and alleged that if he, Mansfield, had been negligent, that negligence was insulated by the independent negligence of the driver Anderson.

Anderson then filed what he denominated as a "third-party complaint" against Mansfield and the Railway Company charging that Mansfield's negligence in failing to sound the whistle and the railroad's failure to clear vegetation within the right-of-way and to instruct its engineer Mansfield to operate the train at a reasonable rate of speed and to sound the train whistle proximately caused the damage to the tractor-trailer. Anderson alleged that because of such negligence on the part of Mansfield and the Railway Company, should there be any recovery by Galyeans against him he was entitled to contribution from Mansfield and the railroad. Mansfield and the Railway Company answered Anderson's "third-party complaint," denying negligence and counterclaiming for contribution from Anderson should Galyeans prevail on his counterclaim.

Galyeans, Mansfield, and the Railway Company also filed third-party complaints, alleging that Dimension Milling Company, Inc., was derivatively liable because Anderson was acting as its servant and employee when the collision occurred. Dimension denied negligence on the part of Anderson, but admitted Anderson was its agent, and filed a counterclaim against Mansfield and the Railway Company for damages to its lumber allegedly sustained in the collision.

The parties stipulated that between 8 a.m. and 9 a.m. on 19 March 1976, a railroad engine under the supervision and control of Mansfield as engineer was traveling south toward the railroad crossing at Highway 47 near the point where that highway intersects Highway 8. At the same time a tractor-trailer owned by defendant Galyeans and driven by defendant Anderson was traveling west on Highway 47 toward the same railroad crossing. Galyeans knew that Anderson was driving his tractor-trailer on that date. The tractor-trailer contained a load of lumber owned by Dimension Milling Company, Inc. Evidence pertinent to the questions presented on this appeal will be discussed in the opinion.

At the close of defendants' evidence, plaintiffs moved for a directed verdict on the ground that defendants' evidence showed Anderson's negligence as a matter of law. The motion was denied. The following issues were submitted to and answered by the jury:

1. Were the plaintiffs Ray M. Mansfield and Winston-Salem Southbound Railway Company injured and damaged by the negligence of the defendants Dale Ray Anderson and Dimension Milling Company, Inc.?

ANSWER: No.

2. Did the plaintiff Ray M. Mansfield by his negligence contribute to the injury and damage of the plaintiffs Ray M. Mansfield and Winston-Salem Southbound Railway Company?

ANSWER: _____

3. Did the plaintiff Winston-Salem Southbound Railway Company by its negligence contribute to its damage?

ANSWER: _____

4. What amount, if any, is the plaintiff Ray M. Mansfield entitled to recover for personal injuries?

ANSWER: $_____

5. What amount, if any, is the plaintiff Winston-Salem Southbound Railway Company entitled to recover for property damage?

ANSWER: $_____

6. Was the defendant Dale Ray Anderson the agent of the defendant Reuben Anderson Galyeans?

ANSWER: Yes.

7. Was the defendant Reuben Anderson Galyeans damaged by the negligence of the defendant Dale Ray Anderson?

ANSWER: No.

8. Was the defendant Reuben Anderson Galyeans damaged by the negligence of the plaintiff Ray M. Mansfield?

ANSWER: Yes.

9. Was the defendant Reuben Anderson Galyeans damaged by the negligence of the plaintiff Winston-Salem Southbound Railway Company?

ANSWER: _____

10. Was the defendant Dimension Milling Company, Inc., damaged by the negligence of the plaintiff Ray M. Mansfield?

ANSWER: Yes.

11. Was the defendant Dimension Milling Company, Inc., damaged by the negligence of the plaintiff Winston-Salem Southbound Railway Company?

ANSWER: _____

12. What amount, if any, is the defendant Reuben Anderson Galyeans entitled to recover for property damage?

ANSWER: $10,000.00.

13. What amount, if any, is the defendant Dimension Milling Company, Inc., entitled to recover for property damage?

ANSWER: $267.66.

Plaintiffs moved for judgment notwithstanding the verdict and for a new trial. The motion was denied. Plaintiffs appeal from judgment on the verdict that Galyeans recover $10,000.00 and that Dimension recover $267.66 against the plaintiffs. Defendant Galyeans also appeals, assigning as error the denial of his post-judgment motion to amend the judgment by striking out the jury's answer to issue number 6.

*Brinkley, Walser, McGirt & Miller by Charles H. McGirt for plaintiff appellant Ray M. Mansfield.*

*Craige, Brawley, Lüpfert & Ross by C. Thomas Ross and F. Kevin Mauney for plaintiff appellant Winston-Salem Southbound Railway Company.*

*Stoner, Bowers and Gray by Bob W. Bowers for defendant appellee Dale Ray Anderson.*

*Womble, Carlyle, Sandridge & Rice by Daniel W. Donahue for defendant and third-party plaintiff, Reuben Anderson Galyeans.*

*Jack E. Klass for third-party defendant appellee Dimension Milling Company, Inc.*

PARKER, Judge.

## PLAINTIFFS' APPEAL

Evidence presented by the parties concerning the speed of the train and whether the whistle was timely blown was sharply conflicting. Plaintiffs' evidence tended to show that the train approached the crossing at a speed of 25 to 30 miles per hour and that the whistle blew when the train was a quarter mile from the crossing and kept blowing with only short pauses until the train reached the crossing. Defendants' evidence tended to show that the train was going 40 to 50 miles per hour and that the whistle did not blow until approximately three seconds before the collision, when the tractor-trailer was already on the railroad tracks. By its answers to issues 8 and 10, the jury has resolved these conflicts against the plaintiffs, and on this appeal they have raised no question concerning the jury's determination that Mansfield, the engineer, was negligent in the manner in which he operated the train, nor have they questioned Mansfield's status as an agent and employee of the Railway Company. Thus, for purposes of this appeal it may be taken as established that Mansfield was negligent in his operation of the train and that the Railway Company is derivatively liable for his negligence.

Plaintiff-appellants assign error to the court's denial of their motion for a directed verdict on the issue of defendant Anderson's contributory negligence. In considering the question thus presented, we view the case in the context of the defendants' counterclaims against the plaintiffs, the defendants with respect to their counterclaims being in the position normally occupied by a plaintiff and plaintiff-appellants being in the position normally occupied by a defendant.

In its pleadings, Dimension Milling Company, Inc. acknowledged that Anderson was its agent, and the jury by its

answer to Issue No. 6 has found that Anderson was also the agent of the defendant Galyeans. Thus, both of these counterclaiming defendants would be derivatively responsible for Anderson's contributory negligence should it be determined that he was guilty of contributory negligence.

The court's ruling denying appellants' motion for a directed verdict on the ground of Anderson's contributory negligence must be sustained unless defendants' evidence, taken as true and interpreted in the light most favorable to them, so clearly shows his negligence to have been a proximate cause of the collision and of the counterclaiming defendants' resulting damages that it will support no other conclusion as a matter of law. *Neal v. Booth*, 287 N.C. 237, 214 S.E. 2d 36 (1975); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Defendants' evidence, taken as true and interpreted in the light most favorable to them, supplemented by such portions of plaintiffs' evidence as are favorable to the defendants, shows the following:

On the morning of 19 March 1976, Anderson, accompanied by a passenger, Fred Gothke, drove the tractor-trailer owned by Galyeans in a westerly direction on Highway 47 toward the grade crossing at which the railroad tracks crossed the highway at a right angle. In the vicinity of the crossing, Highway 47 was a paved two-lane road approximately 20 feet wide. The pavement was rough asphalt as the road crossed the railroad tracks. On either side of the tracks there was a regular railroad crossing sign, but there were no electrical or mechanical signs or devices to indicate the approach of a train to persons traveling on the highway.

The engine of the tractor which Anderson was driving was located beneath the driver's seat, and the driver sat right up at the front of the cab. The trailer was 40 feet long and was loaded with lumber. The lumber weighed approximately 40,000 pounds, and the total weight of the tractor-trailer and the lumber was 75,000 to 79,000 pounds. The weather was clear. It was not cold, and the window on the driver's side was half-way down.

Between 75 and 100 yards east of the tracks, the road passed over the crest of a hill. As Anderson drove over the crest of this hill, the railroad tracks came into his view. At that time he had already started slowing down and was going 25 to 30 miles per

hour when he topped the hill. After he crested the hill and started down hill toward the crossing, he continued to slow down by applying pressure to the brakes and shifting gears down. When he was 50 feet from the tracks, he was traveling at 8 to 10 miles per hour and had a view of the tracks about 50 feet to the north, but bushes and trees growing on a little bank 7 or 8 feet from the railroad tracks and approximately 50 or 60 feet from the road prevented him from seeing further in that direction. His window was rolled down, but he heard no whistle or train noise. As he approached nearer to the tracks, he leaned forward in the cab and started to look both ways for a train. He first saw the train when he was 3 to 4 feet from the tracks. At that time the train was 50 to 60 feet up the tracks to his right, approaching the crossing from the north. His speed at that moment was 3 to 4 miles per hour. He immediately braked in an attempt to stop. When he realized he could not stop completely without the train hitting the cab in which he and his passenger were riding, he accelerated in an attempt to clear the tracks. The tractor and about half of the trailer did clear the tracks, but the train engine struck the trailer near its rear wheels, the impact knocking the tractor-trailer off the tracks and south of the highway, a distance of about 49 feet. Anderson heard the whistle blow "approximately three seconds or so before it hit, it blew, then it hit." The train continued southward along the tracks until it came to a stop with the engine approximately 730 feet south of the highway crossing.

Anderson testified that he was familiar with the road on which he was traveling, having traveled on it "quite a few times" before, and that he was familiar with the crossing, having crossed it "many times." He testified that as he approached the crossing he had a conversation with his passenger, Gothke, about the crossing, and that when they were "topping the hill and coming over the hill I was telling him how bad the track was." Anderson further testified:

> "As I approached that track and was within five feet of the track I had not seen any train on the track at that time. I had not heard any noise.

>                    *    *    *

> "I didn't see the train and had no knowledge the train was coming until I was about 3 to 4 feet from the track. At

that time my first reaction was to naturally hit the brakes. I was going a very slow speed at that time. As soon as I hit the brakes — I kept moving forward the whole time — I realized that if I stopped I was going to be hit in the cab area so I decided to get across so at least I would not get hit where Mr. Gothke and I were seated.

*   *   *

"Yes, I knew, of course, if I needed to stop my truck it would be necessary to go even slower than the speed I was in if I had to put brakes on. As to whether it occurred to me as I came down the hill that maybe a train was using that track that morning, yes, that's what I was looking for. As to how many feet it takes to stop my truck, it depends on how fast I am going — when I am going 3 to 4 mph, I don't know. As to whether I don't have an opinion, 5 feet, something like that. As to whether at the speed I was traveling I could have stopped in 5 or 6 feet, something like that.

*   *   *

"When I first saw the train it was about 50 to 60 feet from the crossing and I was right up on the track. I couldn't see more than 50 to 60 feet in the direction the train was coming. No, there was no point when I was coming down the road, any point other than when I was within 3 or 4 feet of the tracks that I could see beyond 50 to 60 feet.

*   *   *

"Yes, I say I was familiar with this crossing and I passed it many times. I knew I couldn't see until I got within 3 or 4 feet of the track, I knew that before I came along. If I wanted to look I know I would have to get to that area and stop and look, but I didn't stop."

[1-3] It is well established that when approaching a railroad grade crossing both trainmen and travelers on the highway owe a reciprocal duty to keep a proper lookout and to exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid a collision. *Irby v. R. R.*, 246 N.C. 384, 98 S.E. 2d 349 (1957). While it is the duty of the railroad to give reasonable and timely warning of the approach of its train

to a crossing, its failure to do so does not relieve a traveler on the highway of his duty to exercise due care for his own safety, *Godwin v. R. R.*, 220 N.C. 281, 17 S.E. 2d 137 (1941), and the highway traveler who knows or should know that he is approaching a railroad crossing "may not proceed to and upon it without looking in both directions along the track merely because he has heard no signal of an approaching train." *Cox v. Gallamore*, 267 N.C. 537, 543, 148 S.E. 2d 616, 621 (1966). In addition, if in such a case the driver knows or should know that he is approaching a crossing at which his view of the track is obstructed, he owes the duty to reduce his speed so that he can stop his vehicle, if necessary, in order to avoid a collision with an approaching train. *Price v. Railroad*, 274 N.C. 32, 161 S.E. 2d 590 (1968); *Cox v. Gallamore, supra.*

[4] Application of these principles to the facts shown by the evidence favorable to the defendants in the present case discloses that the driver, Anderson, was contributorily negligent as a matter of law. His own testimony establishes that he was familiar with the crossing and knew it to be hazardous. In particular, he knew that his view northward up the tracks to his right would be obstructed until he got within three or four feet of the tracks. He also knew that his tractor-trailer was hauling a heavy load and that even moving at only 3 to 4 miles per hour he would require a distance of "something like" five to six feet in which to bring his vehicle to a stop. He admitted: "Yes, I knew, of course, if I needed to stop my truck it would be necessary to go even slower than the speed I was in if I had to put brakes on." Yet with this full knowledge of the hazards of the crossing, he failed to stop or to slow his vehicle sufficiently to permit him to avoid a collision. His own testimony establishes that when he reached the position where he knew he must be in order to see a safe distance up the track, he was moving at a speed which he knew would not permit him to stop his vehicle before it reached the crossing. By the time he could know whether a train was coming, his speed was such that it was already too late for him to avoid being hit. Albeit he was moving slowly and looking from side to side, he knew that his rate of travel was still too great to permit these cautions to be effective.

In holding a plaintiff in a railroad crossing case guilty of contributory negligence as a matter of law, our Supreme Court has said:

> It does not suffice to say that plaintiff stopped, looked, and listened. His looking and listening must be timely, so that his precaution will be effective. It was his duty to "look attentively, up and down the track," in time to save himself, if opportunity to do so was available to him. (Citations omitted.)

*Parker v. R. R.*, 232 N.C. 472, 474, 61 S.E. 2d 370, 371 (1950).

In the present case the driver, Anderson, had the opportunity, of which he was fully aware, to know whether he could cross the tracks in safety. He testified that he knew he couldn't see until he got within three or four feet of the track, and that "[i]f I wanted to look I knew I would have to get to that area and stop and look, but I didn't stop." The conclusion is inescapable that, with full knowledge both of the danger and of the means readily available to save himself from it, he elected to take the chance that no train would be coming. Making such an election was contributory negligence as a matter of law.

[5] The plaintiff Railway Company also assigns error to a portion of the court's charge to the jury in which the court instructed that the Railway Company could be held negligent for failure to remove trees and bushes "from the sides of the tracks" if they obstructed the view of a traveler on the highway so that he could not cross the tracks in safety. Appellant contends this instruction was erroneous because there was no evidence concerning the width of the Railway Company's right-of-way or showing that the Company had any responsibility to clear any of the trees and bushes which had been described by the witnesses in this case. Even so, the instruction of which the Railway Company complains was given while the court was instructing on the third issue, which related to the Railway Company's independent contributory negligence, an issue which the jury did not reach. Although the instruction might also have had some relevance to Issues 9 and 11, the jury did not reach these issues either. Since the jury did not reach any issue to which the instruction pertained, and since in any event the Railway Company is derivatively responsible for the negligence of its agent, Mansfield, as to which

no error has been assigned, the error in the charge of which the Railway Company complains, if any error occurred, could not have been prejudicial to it. *Penny v. R. R. Co.*, 10 N.C. App. 659, 179 S.E. 2d 862 (1971), cited by the Railway Company, is not controlling. In that case, which also arose out of a railroad crossing accident, the trial court instructed the jury that there were "some obstructions along the right-of-way of the railroad track and the highway, such as an embankment along the track and trees and bushes along the track and highway at the southwest corner of the intersection." On appeal by the Railroad Company from judgment rendered on the jury's verdict finding against it on issues of negligence, contributory negligence, and damages, this Court found the instruction erroneous because a review of the record disclosed no evidence that any embankment, trees, shrubbery, or other obstructions were on defendant's right-of-way, and thus the instruction assumed the existence of material facts not in evidence. This Court found the error sufficiently prejudicial to warrant granting the Railroad Company a new trial, since, even though the plaintiff had relied primarily on the failure of the defendant to give reasonable and timely warning as its train approached the crossing, it was felt that the erroneous instruction had the tendency to bolster the plaintiff's contentions of negligence. In the present case the instruction of which the Railway Company complains did not so clearly assume the existence of any material facts not supported by the evidence, and more importantly, the form of the issues submitted in the present case and the jury's answers thereto make it abundantly clear that the jury did not find the Railway Company independently negligent for failure to keep its right-of-way clear of obstructions, and nothing in the record indicates that the instruction otherwise tended to bolster the appellees' contentions of negligence. The Railway Company's assignment of error directed to the court's charge to the jury is overruled.

[6] We also overrule plaintiff's assignment of error directed to the denial of their motion for judgment notwithstanding the verdict. In support of this assignment, plaintiffs contend that defendants' evidence not only discloses that Anderson was guilty of contributory negligence as a matter of law, a conclusion with which we have agreed, but also establishes that Anderson's negligence was the sole proximate cause of the collision. We find no

merit in this latter contention. As previously noted, for purposes of this appeal it is established that plaintiff Mansfield was negligent in operating the train too fast and in failing to give timely warning of its approach to the crossing by blowing the whistle. It is also established that his negligence is imputed to the plaintiff Railway Company under the doctrine of *respondeat superior.* These acts of negligence on the part of Mansfield continued to operate and were in force and effect up to the moment of impact. Mansfield's negligence was not "insulated" or "superseded" by that of Anderson, but the negligence of both combined to proximately cause the collision. "No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury." *Brown v. R. R. Co.,* 276 N.C. 398, 402, 172 S.E. 2d 502, 505 (1970); *accord, Price v. Railroad,* 274 N.C. 32, 161 S.E. 2d 590 (1968); *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876 (1942).

Finally, plaintiffs contend that the court erred in denying their motion to set the verdict aside and for a new trial on the grounds that the verdict on issues 1, 7, 8 and 10 was against the greater weight of the evidence. This motion was addressed to the sound discretion of the trial judge and his ruling thereon is not appealable absent a showing of manifest abuse of discretion. *Rayfield v. Clark,* 283 N.C. 362, 196 S.E. 2d 197 (1973); *Williams v. Boulerice,* 269 N.C. 499, 153 S.E. 2d 95 (1967). No abuse of discretion has been shown.

Plaintiffs' remaining assignments of error have not been brought forward in their brief and for that reason are deemed abandoned.

The result on plaintiffs' appeal is that the judgment rendered against them and in favor of defendants Galyeans and Dimension Milling Company, Inc. is reversed on the grounds that the evidence shows the contributory negligence of their agent, Anderson, as a matter of law.

## DEFENDANT GALYEANS'S APPEAL

[7] On his appeal, defendant Galyeans contends that the court erred in failing to instruct the jury that they should consider and answer issue number 6 only if they had first answered issue number 1 "yes," and in failing to allow his post-judgment motion

to amend the judgment by striking out the jury's answer to issue number 6. Galyeans admits that the issue as to whether Anderson was his agent was raised by the pleadings, and he does not contend there was any error in the admission or exclusion of evidence or in the court's instructions on the sixth issue other than in the court's failure to instruct the jury that they should not consider and pass on that issue unless they had answered the first issue in the affirmative. He contends that the jury's negative finding on the first issue rendered any question as to Anderson's status as his agent moot. If so, in view of our holding that Anderson was contributorily negligent as a matter of law, the question of his status as Galyeans's agent is moot no longer, and we see no sound reason why Galyeans should be permitted to relitigate that question.

The result is:

On plaintiffs' appeal, the judgment against them is

Reversed.

On defendant Galyeans's appeal,

No Error.

Chief Judge MORRIS concurs.

Judge MARTIN (Harry C.) dissents.

Judge MARTIN (Harry C.) dissenting:

I respectfully dissent from the scholarly opinion of my distinguished colleague. This dissent is limited to the holding of the majority that Anderson was contributorily negligent as a matter of law. I concur in the other holdings set forth in the majority opinion.

Appellants' motion for a directed verdict based on Anderson's contributory negligence must be denied unless Anderson's evidence, taken as true and considered in the light most favorable to him, so clearly shows his negligence to have been a proximate cause of the collision and defendants' resulting damages that it will support *no other conclusion* as a matter of law. *Neal v. Booth*, 287 N.C. 237, 214 S.E. 2d 36 (1975).

As I view it, the controlling question in this appeal may be stated as follows:

Is it contributory negligence as a matter of law for the driver of a loaded tractor-trailer, when approaching a crossing with vision of the track partially obstructed by growth on the right-of-way, to enter upon the railroad crossing without stopping when the train operator is negligent in the operation of the train by travelling too fast and in failing to give timely warning of its approach to the crossing?

In reciting the evidence favorable to Anderson on the motion for directed verdict, the majority overlooks the important facts that the train was approaching the crossing at an excessive speed and failed to give any warning of its approach by horn, bell, whistle or other device and that vision of the crossing was partially obstructed by growth on the right-of-way. Anderson's actions must be viewed in this setting. He was not bound to anticipate that the train would approach the crossing in a negligent manner; however, his not hearing a warning signal of the approaching train would not justify his assuming that no train was approaching. *Neal v. Booth, supra.*

With no warning being given by the train crew that the train was approaching the blind crossing, would a reasonably prudent person stop his tractor-trailer in order to look for such train, when he was already looking and listening for the train as he approached the crossing at 3-4 m.p.h.? The majority say yes, or at least that he would operate his vehicle at a speed slower than 3-4 m.p.h., so as to be able to stop before reaching the rail. They further hold that such failure is "contributory negligence" as a matter of law.

The evidence establishes that Anderson reduced the speed of his vehicle as he approached the crossing; he was alert for the existence of an approaching train; he looked, and maintained a lookout for the train; he listened and continued to listen; he maintained his vehicle under control.

Anderson in approaching the track was in much the same position as the plaintiff in *Townsend v. Railway Co.*, 35 N.C. App. 482, 241 S.E. 2d 859 (1978), affirmed without precedential value by an equally divided Court in 296 N.C. 246, 249 S.E. 2d 801 (1978). In

*Townsend*, plaintiff was first faced with a sidetrack located forty-seven feet from the main line track. He stopped his vehicle at the sidetrack, looked, listened and proceeded forward. Townsend, on approaching the main line, was in circumstances similar to those facing Anderson as he approached the railroad track. Their view of the track was partially blocked because of obstructions near the track, both were going at a slow rate of speed, both were looking and listening; not hearing or seeing a train, both continued onto the crossing and were struck by an approaching train. In *Townsend*, the Court stated:

> A driver of an automobile or truck is expected to stop at a point before the crossing which yields a clear view of the tracks, and "look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company." *Johnson v. R.R.*, 255 N.C. 386, 388, 121 S.E. 2d 580, 582 (1961). "A traveler on the highway has the right to expect timely warning, but the engineer's failure to give such warning will not justify an assumption that no train is approaching." *Neal v. Booth, supra* at 242, 214 S.E. 2d at 39. "Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury." *Johnson v. R.R., supra* at 388-9, 121 S.E. 2d at 582.

*Id.* at 485-86, 241 S.E. 2d at 862.

This Court in *Townsend* held the truck driver was not negligent as a matter of law and that the question was properly for the jury.

Here, the evidence raises inferences that Anderson drove upon the main line at an unreasonable speed in that he could not stop short of the rail before seeing the train; that a reasonably prudent person in similar circumstances would have stopped, got out of the vehicle, gone to a position closer than three to four feet from the track to look for an approaching train. *See Moore v. R.R.*, 201 N.C. 26, 158 S.E. 556 (1931). However, those are not the *only* conclusions reasonably deducible from the evidence. *Neal v. Booth, supra.* That same evidence likewise gives rise to inferences that Anderson slowed his vehicle to a reasonable speed in approaching the crossing; that he kept his vehicle under proper con-

trol; that he kept a reasonable and proper lookout for approaching trains; that he listened in a reasonable manner for approaching trains; and that his failure to see the train was proximately caused by the obstructions along the tracks interfering with his view ot the tracks. The question of contributory negligence necessarily involves several unknown quantities determinable only by the jury. The evidence does not support a finding of negligence as a matter of law.

In making his motion for directed verdict at the close of all the evidence, counsel for plaintiffs Mansfield and the railway company argued that the evidence disclosed as a matter of law that Anderson was acting as the agent of Galyeans at the time of the collision. The trial court simply denied plaintiffs' motions without specific reference to either the questions of agency or the negligence of Anderson. The trial court submitted issues to the jury of Anderson's negligence in the first and seventh issues, both being answered that he was not negligent. The question of Anderson being the agent of Galyeans was submitted to the jury in the sixth issue and answered in the affirmative. It must be remembered that Anderson made no claim against plaintiffs. In order for plaintiffs to defeat Galyeans' and Dimension's claims, they must show as a matter of law that Anderson was the agent of Galyeans and Dimension and that the negligence of Anderson was one of the proximate causes of their damages.

Dimension alleged Anderson was its agent; Galyeans denied Anderson was his agent and crossclaimed against him and Dimension. Plaintiffs' counsel did not move for a directed verdict against Galyeans on the limited question of Anderson's negligence, leaving the issue of agency for the jury. Their motions necessarily involved both negligence and agency. At the time the motions for directed verdict were made, it had not been judicially determined that Anderson was the agent of Galyeans when the collision occurred. This was later determined by the verdict of the jury. The evidence does not support a finding that Anderson was Galyeans' agent as a matter of law. The appellant railway company in its reply brief argues that this question of agency was properly submitted to the jury. In its principal brief, the railway company does not argue that the evidence supported a directed verdict on the agency issue at the close of all the evidence. Ab-

sent a finding of agency as a matter of law, the directing of a verdict against Galyeans would have been improper.

I find the evidence considered under the above-stated rule is not sufficient to constitute contributory negligence as a matter of law. It was a question for the twelve, and they have reconciled it. I vote to affirm.