RAY M. MANSFIELD, Plaintiff v. DALE RAY ANDERSON, Defendant, and REUBEN ANDERSON GALYEANS, Defendant and Third-Party Plaintiff v. DIMENSION MILLING COMPANY, INC., Third-Party Defendant, and WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY, Plaintiff v. DALE RAY ANDERSON, Defendant, and REUBEN ANDERSON GALYEANS, Defendant and Third-Party Plaintiff v. DIMENSION MILLING COMPANY, INC., Third-Party Defendant

No. 13

(Filed 1 April 1980)

Railroads § 5.8— grade crossing accident—obstructed view at crossing—motorist not contributorily negligent as matter of law

     The evidence did not show that the driver of a tractor-trailer which collided with a train at a grade crossing was contributorily negligent as a matter of law where there was evidence that the driver approached the crossing from the east and his view of the tracks to the north from whence the train came

was obstructed by a fence and vegetation; one interpretation of the driver's testimony was that he had to get as close as one foot or one to two feet from the track in order to see a sufficient distance northwardly to allow him to know whether he could cross safely; the driver testified that he was going three to four miles per hour as he neared the track, and that he observed the train some fifty to sixty feet away, slammed on his brakes, and then accelerated in order to get the cab off the track; and other witnesses familiar with the crossing testified that there was no place east of the crossing from which a motorist could safely stop and see a sufficient distance to the north, since it was for the jury to determine whether any driver could safely stop one foot or one to two feet from a railroad track and whether there was any point east of the crossing at which the driver had an opportunity to stop safely and see a sufficient distance up the tracks to know whether he could safely cross, and the jury could find that the driver had a severely obstructed view of the track which precluded him from having a safe position from which to look and listen, and that he was exposed without fault on his part to a sudden peril and had to make a quick decision.

Justices HUSKINS and BRITT dissent.

APPEAL pursuant to G.S. 7A-30(2) by defendants Dale Ray Anderson and Reuben Anderson Galyeans and third-party defendant Dimension Milling Company, Inc., from a decision of a divided panel of the Court of Appeals, 43 N.C. App. 77, 258 S.E. 2d 366 (1979), reversing a judgment entered by *Judge Mills* at the 15 May 1978 Session of DAVIDSON Superior court.

*Brinkley, Walser, McGirt & Miller by Charles H. McGirt, Attorneys for plaintiff-appellee Ray M. Mansfield.*

*Craige, Brawley, Lüpfert & Ross by C. Thomas Ross, Attorneys for plaintiff-appellee Winston-Salem Southbound Railway Company.*

*Stoner, Bowers and Gray by Bob W. Bowers, Attorneys for defendant-appellant Dale Ray Anderson.*

*Womble, Carlyle, Sandridge & Rice by Daniel W. Donahue, Attorneys for defendant and third-party plaintiff-appellant Reuben Anderson Galyeans.*

*Jack E. Klass, Attorney for third-party defendant-appellant Dimension Milling Company, Inc.*

EXUM, Justice.

The several claims, cross-claims, and counterclaims asserted all arise out of a collision on 19 March 1976 between a train and a

tractor-trailer at a grade crossing of the railroad and the roadway. The sole question presented is whether the Court of Appeals' majority erred in concluding that the operator of the tractor-trailer was contributorily negligent as a matter of law. We hold this conclusion to be error and reverse. We order that the judgment of the trial court be reinstated.

The Winston-Salem Southbound Railway Company owned the train, and Ray Mansfield, its engineer, operated it. Reuben Galyeans owned the tractor-trailer, and Dale Anderson operated it. Dimension Milling Company, Inc., owned a load of lumber being hauled by the tractor-trailer. The collision resulted in personal injury to Mansfield and in property damage to the Railway Company, Galyeans, and the Milling Company. Anderson was not hurt. The intricacies of the pleadings resulting from this milieu are fully set out in the Court of Appeals' majority opinion and need not be here repeated. At trial the jury found that Mansfield and the Railway Company were not injured or damaged by the negligence of Anderson but that Galyeans and the Milling Company were both damaged by the negligence of Mansfield. It also found Anderson to be the agent of Galyeans; the Milling Company conceded Anderson was its agent. It awarded damages in favor of Galyeans in the sum of $10,000 and in favor of the Milling Company in the sum of $267.66. Judgment on the verdict was entered in favor of Galyeans and the Milling Company against both plaintiffs. The Court of Appeals' majority concluded that Anderson, as agent of both Galyeans and the Milling Company, was contributorily negligent as a matter of law and reversed the judgment. We disagree with this conclusion and reverse the Court of Appeals.

We agree with the well-established principles of law relied on by the Court of Appeals in determining whether a motorist approaching a railroad crossing is contributorily negligent as a matter of law and will not repeat those principles. We disagree with the Court of Appeals' application of the principles to the facts.

The parties stipulated that between 8:00 a.m. and 9:00 a.m. on 19 March 1976 the train was proceeding south toward the crossing of the railroad track and highway 47 south of Lexington. At the same time the tractor-trailer was proceeding west on highway 47 toward the crossing. The weather was clear.

The evidence most favorable to Galyeans and the Milling Company tended to show as follows:

The crossing was at right angles with highway 47 running east-west and the railroad track running north-south. The crossing was marked, but there were no electrical or mechanical devices to warn of an approaching train. The view to the north up the track of a motorist proceeding west toward the crossing was obstructed by a fence and vegetation. The fence ran along the north side of the road east of the crossing and northward along the east side of the track. A mixture of "trees, evergreens, sycamore and what-not, briars and honeysuckle" grew "along the railroad track looking north." One witness, thoroughly familiar with the crossing, testified, "[y]ou can't see the railroad when you approach because of the trees" and in order "to see a train north of that crossing 50 feet away . . . you have to just get about on the track." This witness testified further that in order to safely cross this track "you need somebody to ride with you and run in front of you and tell you to come on." Another witness, who drove the crossing every day, testified that as you approach the crossing from the east "you have to get the front of your wheels on the first track before you can see up the track because of the undergrowth, you just can't see." This same witness testified that he observed the train just before the accident about a quarter of a mile north of the crossing heading south. His attention was attracted to it by the loud noise it made. He testified that the train "was coming down and the wheels sounded like they was coming out from under it." He estimated the speed of the train at that time to be 40 to 50 mph.

Anderson, himself, testified that he had driven over this crossing many times. As he approached it on the day in question, he remarked to his passenger about "how bad the track was." He slowed his rig to 25 to 30 mph as he crested a hill some 75 to 100 yards east of the crossing. As he approached the track he continued to slow down and to be alert for an approaching train. He looked to the extent that he could see up and down the track and he listened. His view to the north was obstructed. He heard nothing. As he got "about two feet" from the track he was going three to four miles per hour. At that point he observed the train some 50 to 60 feet away and slammed his brakes. Realizing that if he stopped, the cab of his rig would be resting on the track, he

Mansfield v. Anderson and Railway Co. v. Anderson

accelerated in order to get the cab off the track. He succeeded in doing this but only "about half of the trailer" cleared the track. The train struck the trailer. Anderson heard no warning whistle from the train until about three seconds before the collision. The train traveled some six to seven hundred feet beyond the collision before stopping.

Anderson testified that his rig, including its load of lumber, weighed 75,000 to 79,000 pounds. At three to four miles per hour, Anderson testified on cross-examination, the rig would probably require five or six feet to come to a stop. On recross-examination Anderson said that he "knew I couldn't see until I got within 3 or 4 feet of the track . . . . If I wanted to look I know I would have to get to that area and stop and look, but I didn't stop." Seizing on this testimony, the Court of Appeals concluded that Anderson, as a matter of law, was contributorily negligent. It reasoned that this testimony established beyond rational debate that by the time Anderson "could know whether a train was coming, his speed was such that it was already too late for him to avoid being hit. Albeit he was moving slowly and looking from side to side, he knew that his rate of travel was still too great to permit these cautions to be effective." 43 N.C. App. at 87, 258 S.E. 2d at 372. The Court of Appeals relied on this language from *Parker v. R.R.,* 232 N.C. 472, 474, 61 S.E. 2d 370, 371 (1950):

"It does not suffice to say that plaintiff stopped, looked, and listened. His looking and listening must be timely (Citations omitted.) so that his precaution will be effective. (Citations omitted.) It was his duty to 'look attentively, up and down the track,' in time to save himself, *if opportunity to do so was available to him*." (Emphasis supplied.)

The Court of Appeals then concluded that Anderson, as a matter of law, had an opportunity

"to know whether he could cross the tracks in safety . . . . The conclusion is inescapable that, with full knowledge both of the danger and of the means readily available to save himself from it, he elected to take the chance that no train would be coming. Making such an election was contributory negligence as a matter of law." 43 N.C. App. at 88, 258 S.E. 2d at 372.

We disagree with these conclusions. Even if other evidence more favorable to Galyeans and the Milling Company than Anderson's testimony is disregarded, Anderson's testimony standing alone does not make out his contributory negligence as a matter of law because it does not demonstrate conclusively, as the Court of Appeals thought it did, that there *was* a point east of the crossing at which Anderson had an opportunity to stop safely and see a sufficient distance up the track to know whether he could safely cross. Whether such a point existed was, we think, a question for the jury.

The Court of Appeals seemed to conclude that as a matter of law this point existed some three to four feet east of the track. It based this conclusion on portions of Anderson's testimony. Actually Anderson's testimony is equivocal, if not conflicting, as to precisely how close to the track he had to be before he could see a sufficient distance to the north. Anderson testified that he first saw the train when he was two or three feet from the track and it was approximately 50 to 60 feet away at the time. He said then in order to see "60 feet or more" up the track you would have to get "one or two feet" from it and that "if I had stopped one or two feet from the track I could have seen a long way." Again, "[w]hen I first saw the train it was about 50 to 60 feet from the crossing and I was right up on the track. I couldn't see more than 50 to 60 feet in the direction the train was coming. No, there was no point when I was coming down the road, any point other than when I was *within* 3 or 4 feet of the tracks that I could see beyond 50 to 60 feet." (Emphasis supplied.) Anderson also testified that he couldn't see "any point up that track . . . until you get right on the track" and that he couldn't see "clearly" up the track until he got "about a foot away from the track." A fair interpretation of Anderson's testimony and certainly one that could be accepted by the jury is that at three to four feet east of the track he could not see a sufficient distance northwardly to allow him to know whether he could cross in safety. In order to see such a distance, he had to get as close as one foot, or one to two feet, from the track.

It is true that Anderson, on cross-examination, also testified, "You ask if I stop the cab one foot from those tracks or 2 feet from the track I wouldn't have been hit, and I answer no, I don't guess I would." Notwithstanding this testimony we think it a

question for the jury whether any driver, including Anderson, can safely stop one foot, or one to two feet, from a railroad track. Rarely should a court decide the legal effect of such minute distances in a negligence action being tried by a jury. The decision is best left to the jury. "Mathematical possibilities and the results of exact measurements, showing minimal space in which observations could be made, should not be controlling factors in determining whether nonsuit should be allowed as a matter of law." *Johnson v. R.R.*, 257 N.C. 712, 716, 127 S.E. 2d 521, 524 (1962); *accord, Neal v. Booth*, 287 N.C. 237, 214 S.E. 2d 36 (1975).

While evidence for the Railway Company was generally to the contrary, other witnesses as familiar as Anderson with the crossing testified, as we have already noted, that *there was no place* east of the crossing from which a motorist could safely stop and see a sufficient distance to the north. The jury was entitled to consider this evidence. Galyeans and the Milling Company were entitled to the benefit of it on a determination of whether Anderson was contributorily negligent as a matter of law.

*Johnson v. R.R., supra*, and *Neal v. Booth, supra*, support our decision here. *Johnson* was tried twice. Plaintiff motorist was nonsuited at the first trial and this Court reversed. *Johnson v. R.R.*, 255 N.C. 386, 121 S.E. 2d 580 (1961). At the second trial, evidence for the motorist was somewhat less favorable to him than at the first. He was again nonsuited at trial. This Court again reversed, 257 N.C. 712, 127 S.E. 2d 521 (1962). Both nonsuits were on the ground of the motorist's contributory negligence. In *Johnson* plaintiff motorist stopped some 30 feet from the track and looked. At this point his view was so obstructed that he could not see beyond 75 feet northwardly up the track. Receiving no indication that a train was approaching, he slowly proceeded toward the track. Proceeding onto the track without further stopping, his automobile was struck by a southbound train. Measurements made at the scene indicated that the motorist "might have stopped just short of the mainline track and gained a clear view up the track to the north for a distance which would have permitted him to see the oncoming train in time to avoid a collision." *Id.* at 716, 127 S.E. 2d at 524. It is true that in *Johnson*, certain automatic mechanical signals at the crossing were not working. The Court stressed this fact, saying this event had the tendency "to abate the ordinary caution of a traveler on the

highway [who] has the right to place some reliance on such failure." *Id.* The Court, however, recognized that although a motorist "has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed . . . the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when from a safe position such looking and listening will suffice to warn him of danger." *Id.* Thus, in *Johnson*, the essential error in the nonsuit was the trial court's failure to take properly into account the obstruction to the view of the motorist and in placing too much stress on the evidence that the motorist might have gained a clearer view up the track had he stopped just short of it. We also note that in *Johnson* the motorist exercised less caution in approaching the track than did Anderson here. In *Johnson* the motorist testified that after he stopped some 30 feet from the track he continued without further stopping. As he continued he "glanced in the direction of north and south, but I was centering my attention primarily on the road. I never saw the train that hit me." *Id.* at 715, 127 S.E. 2d at 523.

In *Neal v. Booth, supra,* 287 N.C. 237, 214 S.E. 2d 36 (1975), this Court reversed a directed verdict entered at trial against plaintiff whose intestate motorist was struck by a train at a crossing where his view of the track was obstructed. The directed verdict was entered on the ground that plaintiff's intestate was contributorily negligent as a matter of law since the evidence "tends to show that . . . [intestate] was traveling at the rate of 5 miles per hour and that his view was obstructed until he was 21 feet from the southernmost track." *Id.* at 240-241, 214 S.E. 2d at 38. Plaintiff's evidence was that his intestate was crossing three tracks where they intersected at right angles with the roadway. His view of the tracks to the east from whence the train came was obstructed by the depot, parked automobiles, and boxcars on a side track, the first of three tracks which the intestate had to cross. Because of these obstructions intestate could not see the train approaching on the third track until he had crossed the side track. He was proceeding at a speed of five miles per hour. In the 21 feet between the side track and the mainline track on which the train was proceeding, the intestate did not stop. The train, proceeding at a speed of 80 mph, collided with the vehicle killing the intestate instantly. There was no signal from the train, and

Mansfield v. Anderson and Railway Co. v. Anderson

the electrical warning device did not activate. This Court, speaking through then Chief Justice Sharp, said, 287 N.C. at 242, 214 S.E. 2d at 39-40:

> "The train has the right of way at a public crossing, but it is the duty of the engineer to sound the customary warnings of the train's approach. A traveler on the highway has the right to expect timely warning, but the engineer's failure to give such warning will not justify an assumption that no train is approaching. Before going upon the track, and at a point where lookout will be effective, 'a traveler must look and listen in both directions for approaching trains, *if not prevented from doing so by the fault of the railroad company.*' He has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when, *from a safe position,* such looking and listening will suffice to warn him of danger. *'Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury.'* Johnson v. R.R., 255 N.C. at 388-389, 121 S.E. 2d at 581-582." (Emphasis supplied.)

We believe there is evidence in the instant case which tends to show that Anderson had a severely obstructed view of the track which precluded him from having a safe position from which to look and listen; that he was exposed without fault on his part to a sudden peril and had to make a quick decision. The case is for the jury. The decision of the Court of Appeals is, therefore,

Reversed.

Justices HUSKINS and BRITT dissent.