**FRAZIER v. CAROLINA COASTAL RY., INC.**

[230 N.C. App. 504 (2013)]

NATHALIE FRAZIER, Plaintiff
v.
CAROLINA COASTAL RAILWAY, INC., ("CLNA") and THE TOWN OF KNIGHTDALE,
ALL JOINTLY AND SEVERALLY, Defendants

No. COA13-426

Filed 19 November 2013

**Negligence—contributory negligence—vehicle collision with train—summary judgment appropriate**

The trial court did not err by granting defendant's motion for summary judgment in a negligence case resulting from a collision between plaintiff's vehicle and a train. The undisputed evidence established that plaintiff was contributorily negligent as a matter of law in driving across a railroad crossing.

Appeal by plaintiff from order entered 22 June 2012 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 9 October 2013.

*The Law Firm of Elesha M. Smith, PLLC, by Elesha M. Smith and Renorda E. Pryor, for plaintiff-appellant.*

*Millberg Gordon Stewart PLLC, by William W. Stewart, Jr., and B. Tyler Brooks, for defendant-appellee.*

BRYANT, Judge.

Where the undisputed evidence establishes that plaintiff was contributorily negligent as a matter of law in driving across a railroad crossing, the trial court's grant of summary judgment for defendant is appropriate.

On 16 January 2009, plaintiff Nathalie Frazier drove her northbound vehicle onto the railroad track intersecting Fayetteville Street in Knightdale ("the crossing") and was struck by a westbound train operated by Carolina Coastal Railway, Inc. ("CLNA"). The collision occurred at 12:28 p.m., under clear weather conditions. The railroad crossing featured warning signs, including railroad crossbuck signs, an advance railroad warning disk, railroad crossing pavement warnings, and a stop line for northbound vehicles approaching the crossing.

On 17 November 2010, plaintiff filed a complaint alleging negligence against defendants Norfolk Southern Corporation (a.k.a. Norfolk Southern Railway Company, a.k.a. Carolina and Northwestern Railway Co. ("Norfolk Southern")), Main Line Rail Management, Inc., CLNA, and the Town of Knightdale for damages for personal injuries resulting from the collision and for punitive damages. Plaintiff filed a separate but related action against the North Carolina Department of Transportation ("NCDOT") on 2 November 2009 and was deposed by NCDOT on 28 April 2011.[1] On 2 February 2011, plaintiff voluntarily dismissed her claims against Norfolk Southern and Main Line Rail Management, Inc. On 23 April 2012, CLNA filed a motion for summary judgment pursuant to N.C.R. Civ. P. 56. On 11 June 2012, the trial court held a hearing on CLNA's motion for summary judgment; on 22 June, CLNA's motion was granted. On 28 June 2012, plaintiff gave notice of voluntary dismissal with prejudice to claims against the Town of Knightdale.

Plaintiff appeals.[2]

---

On appeal, plaintiff argues that the trial court erred in granting CLNA's motion for summary judgment. We disagree.

When a motion for summary judgment is brought, "[t]he question before the trial court . . . is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56 (2011); *Parchment v. Garner*, 135 N.C. App. 312, 315, 520 S.E.2d 100, 102 (1999) (citation and internal quotation omitted). As "[o]ur courts have encountered considerable difficulty in enunciating bright-line rules to govern liability in train-automobile grade crossing accidents[,] . . . each case is evaluated on its own facts." *Parchment*, 135 N.C. App. at 315, 520 S.E.2d at 102. We review a trial court's grant of a motion for summary judgment *de novo. See Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

---

1. Plaintiff's deposition transcript from her complaint against NCDOT, *Nathalie Frazier v. N.C. Dep't of Transp. et al.*, N.C. Industrial Comm'n, I.C. File No. TA-21489, 28 April 2011, was among the transcripts included by defendant CLNA in the instant matter. At the time of plaintiff's appeal to this Court, her separate action against NCDOT was still pending.

2. As plaintiff's notice of appeal from the trial court's granting of defendant CLNA's motion for summary judgment was filed 24 August 2012, after she dismissed with prejudice her claims against the Town of Knightdale on 28 June 2012, plaintiff's appeal is from a final judgment as to all parties and is therefore not interlocutory.

Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment because the evidence presented at the hearing demonstrated genuine issues of material fact as to whether she was contributorily negligent. "[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." *Williams v. Carolina Power & Light*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979) (citations omitted). However,

> [a]lthough summary judgment is seldom fitting in cases involving questions of negligence and contributory negligence, summary judgment will be awarded to a defendant if the evidence is uncontroverted that [the plaintiff] failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of injury.

*Parchment*, 135 N.C. App. at 315, 520 S.E.2d at 102 (citation and internal quotation omitted).

Here, conflicting evidence was presented by both parties as to whether CLNA's train sounded its horn as it came towards the crossing, how much of plaintiff's vehicle was on the crossing at the time of the collision, and the scope of a motorist's visibility at the crossing. Plaintiff cites *Mansfield v. Anderson*, 299 N.C. 662, 264 S.E.2d 51 (1980), in support of her argument that a motion for summary judgment cannot be granted in the face of such conflicting evidence.

In *Mansfield*, our Supreme Court reversed the trial court's granting of the defendant's motion for summary judgment on grounds that the plaintiff was contributorily negligent. The plaintiff's truck was struck by the defendant's train after the plaintiff had started to cross the tracks; the plaintiff testified that although he stopped his truck and looked to see whether a train was coming, his view of the tracks was so obstructed that he could not see an oncoming train until he was within a few feet of the tracks. Our Supreme Court, in reviewing prior cases involving collisions between vehicles and trains and motions for summary judgment claiming contributory negligence, held that

> [t]he train has the right of way at a public crossing, but it is the duty of the engineer to sound the customary warnings of the train's approach. A traveler on the highway has the right to expect timely warning, but *the engineer's failure to give such warning will not justify an assumption that no train is approaching.* Before going upon the track, and at a point where lookout will be effective, 'a traveler must

look and listen in both directions for approaching trains, *if not prevented from doing so by the fault of the railroad company.*' He has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when, *from a safe position,* such looking and listening will suffice to warn him of danger. '*Where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury.*'

*Id.* at 670, 264 S.E.2d at 56 (citing *Johnson v. R.R.*, 255 N.C. at 388-89, 121 S.E. 2d at 581—82 (emphasis added)); *see also Ramey v. Southern Ry. Co.*, 262 N.C. 230, 136 S.E.2d 638 (1964) (holding that plaintiff was guilty of contributory negligence where the railway crossing was well known to plaintiff, the view of the tracks was unobstructed, and plaintiff failed to look for oncoming trains before crossing the tracks); *Jenkins v. Atlantic Coast Line R.R. Co.*, 258 N.C. 58, 127 S.E.2d 778 (1962) (plaintiff was contributorily negligent in relying solely on the absence of an oncoming train's whistle rather than stopping his truck and looking for oncoming trains); *Arvin v. McClintock*, 253 N.C. 679, 118 S.E.2d 129 (1961) (holding that failure of the train operator to sound a warning whistle does not alleviate a motorist's need to stop, look and listen for oncoming trains prior to crossing a railway, even though the crossing may be familiar to the motorist).

Here, plaintiff acknowledged that she had an unobstructed view of westbound approaching trains from the intersection of Railroad Street and Fayetteville Street, from the white stop line on Fayetteville Street by the crossing, and from where her vehicle sat on the crossing. An accident report prepared shortly after the collision indicated that from the white stop line on Fayetteville Street by the crossing looking towards the westbound tracks, a motorist could see without obstruction for 462 feet. Plaintiff also admitted that as she drove her car onto the crossing, she failed to stop at the white stop line clearly marked for northbound motorists, nor did she look in either direction for oncoming trains. Moreover, plaintiff testified that she stopped her vehicle on the railroad tracks for "twenty to thirty seconds" without looking in either direction for an oncoming train. Testimony from two eyewitnesses for defendant indicated that plaintiff's vehicle remained on the tracks for as long as a minute before it was struck. In addition, plaintiff admitted that

there was sufficient space for her vehicle to finish crossing the tracks to reach the intersection of Fayetteville Street and First Avenue safely. Plaintiff further stated that she had driven over the crossing "hundreds of times" and knew, from hearing train whistles at night, that trains used these tracks. As such, unlike the plaintiff in *Mansfield* who stopped and looked for approaching trains, had an obstructed view of the tracks, and when he saw an approaching train was faced with the emergency situation of attempting to drive off of the tracks after he began to cross, here, plaintiff faced none of these issues.

Plaintiff also places emphasis on the crossing being unusually dangerous as proof that the trial court erred in granting defendant's motion for summary judgment. We find this contention to be without merit, as

> [a] railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the Court. 'In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track, and a failure to do so is contributory negligence which will bar recovery. A multitude of decisions of all the courts enforce this reasonable rule.' There are, of course, exceptions to this, as well as most other rules, but *when the traveler can see and won't see he must bear the consequences of his own folly*. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take advantage of it.

*Arvin*, 253 N.C. at 683, 118 S.E.2d at 131 (emphasis added) (citing *Coleman v. R.R.*, 153 N.C. 322, 69 S.E. 251 (1910)).

Here, the trial court made detailed findings of fact regarding defendant's motion for summary judgment as to whether plaintiff was contributorily negligent:

> From the Court's review . . . the following is apparent and undisputed:
>
> (1) By plaintiff's own admission, on 16 January 2009, under clear weather conditions, after making a left turn onto Fayetteville Street from Railroad Street, plaintiff drove

her 2007 Honda CRV onto the Fayetteville Street crossing where she then came to a stop on the railroad track, waiting to turn right onto First Street. Plaintiff admits that she never looked to her left or right for an oncoming train at any time after either turning onto Fayetteville Street or coming to a stop on the track in her vehicle, where she remained for some time. Plaintiff, her expert [], and a UPS driver who witnessed the accident [] all testified that there was sufficient room on the other side of the railroad track to accommodate plaintiff's vehicle without obstructing either traffic on First Street or train traffic. Plaintiff's expert . . . measured the distance from First Street to the rail closest to First Street to be 32 feet. Plaintiff testified that she was familiar with the crossing and that she had used it "hundreds" of times before this incident.

(2) On her approach from Railroad Street to the Fayetteville Street crossing, plaintiff encountered an advance warning disk, standard cross buck signage, and pavement markings, including a white painted line for northbound motorists. From the vantage point of the painted line . . . a northbound motorist has an unobstructed view of approaching westbound trains for approximately 462 feet.

Under North Carolina law, when approaching and going over a railroad crossing, a motorist must look in both directions, from a point where such looking will be effective, and listen for approaching trains. The motorist's duty to look in both directions continues until the motorist is safely clear of the crossing. A failure to discharge this duty is contributory negligence. In this case, the undisputed evidence establishes that the view of approaching trains afforded at the crossing was well within the ranges held by North Carolina appellate courts to be sufficient, as a matter of law, for a motorist to look effectively for approaching trains. The undisputed evidence shows that once on Fayetteville Street plaintiff failed to look in both directions for approaching trains during her approach to the crossing, while driving onto the crossing, and while sitting on the track in her vehicle. Accordingly, the undisputed evidence establishes plaintiff's contributory negligence as a matter of law.

**FRAZIER v. CAROLINA COASTAL RY., INC.**

[230 N.C. App. 504 (2013)]

. . .

Furthermore, no reasonable jury could find that the lack of active signalization (i.e., lights and gates) at the crossing constituted gross negligence. The long-standing common law in North Carolina holds that there can be no finding by a jury of negligence by a railroad for failing to install gates and lights at a railroad crossing unless the jury first finds that the crossing is "peculiarly and unusually hazardous" to the motorist using it. Under this common law, a "peculiarly and unusually hazardous" crossing is one which, in light of the physical conditions present at the crossing at the time of the accident, a reasonably prudent motorist cannot travel over safely by using his or her vision and hearing tò detect the presence of a train on the track. Such a crossing must be one which presents conditions at the time of the accident which are "so treacherous" that a reasonably prudent motorist cannot use it safely without the assistance of automated warnings. According to the undisputed evidence . . . there is no genuine issue of material fact in this case as to the available sight distance at this crossing from a safe place to look for approaching trains on the day of the accident. The undisputed evidence thus establishes that there was a safe point from which plaintiff could have looked for a train and traveled over this railroad crossing safely. Thus, as a matter of law, this Court concludes that this crossing was not "peculiarly and unusually hazardous."

We agree with the trial court's findings, as the evidence presented by both parties showed that, despite defendant's train's failure to sound its whistle, there were no genuine issues of material fact as to plaintiff's failure to exercise ordinary care in approaching and traversing the crossing, and that failure to exercise ordinary care was a proximate cause of plaintiff's injury. *See Parchment*, 135 N.C. App. at 316—18, 520 S.E.2d at 103—04. Accordingly, as the evidence presented to the trial court showed plaintiff to be contributorily negligent as a matter of law, the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.

Judges HUNTER, Robert C., and STEELMAN concur.